United States Court of Appeals,

Eleventh Circuit.

No. 95-8663.

Terence George KELLY, Plaintiff-Appellant,

v.

Hilda T. SERNA, Robert R. Michelotti, Mona Polen Jerkins, Raleigh J. Lopez, Steven R. Wisebram, Craig A. Gillen, each individually, United States of America, Defendant-Appellees.

July 11, 1996.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:91-cv-3155-JTC), Jack T. Camp, Judge.

Before KRAVITCH and CARNES, Circuit Judges, and HILL, Senior Circuit Judge.

HILL, Senior Circuit Judge:

Terence G. Kelly, an attorney, represented two defendants charged with drug offenses. During the course of that representation, agents of the Drug Enforcement Agency (DEA) received information that Kelly, himself, was involved in the criminal drug activity. Kelly was indicted by a grand jury, charged and convicted of one count of conspiracy to possess with intent to distribute cocaine and one count of aiding, abetting, and counseling the possession with intent to distribute cocaine. His conviction was reversed on appeal to this court. *United States v. Kelly,* 888 F.2d 732 (11th Cir.1989).

After we reversed his conviction, Kelly filed this action for malicious prosecution and various constitutional violations (*Bivens* claims) against several DEA agents, as well as the United States of America. The district court dismissed Kelly's *Bivens* claims, and entered summary judgment for defendants on his malicious

prosecution claim.   For the following reasons, we affirm the district court's orders.

## I. BACKGROUND

Kelly represented two drug traffickers—Raul Restrepo and Cirilo Figueroa.  In 1985, Restrepo arrived in Atlanta with three kilograms of cocaine and left it with Figueroa.  One of the kilograms was not of good quality and Figueroa buried it. Thereafter, Restrepo sold the rest of the cocaine through Raul Montes to a purported customer who turned out to be a DEA agent. Restrepo was arrested and sought Figueroa's help in retaining a lawyer.  Figueroa referred Restrepo to Kelly because Figueroa had had an attorney-client relationship with Kelly since 1979.

At Kelly's trial, Restrepo testified he told Kelly about Figueroa's involvement and possession of the third kilo of cocaine and requested Kelly to ask Figueroa to sell the cocaine and use the proceeds to pay Kelly's fee.  Restrepo testified that Kelly told him Figueroa had already told Kelly about Figueroa's possession of the cocaine.  Restrepo also testified that Kelly brought back a message from Figueroa that the cocaine was not salable and had been buried, that Figueroa was under pressure from police surveillance and that Figueroa could no longer financially help Restrepo.

Restrepo then decided to cooperate with the government and pled guilty.  After a debriefing by DEA agents at which Kelly was present, Restrepo contacted a DEA agent and arranged a second meeting without Kelly.  Restrepo told the DEA agent about the kilo of cocaine in Figueroa's possession, that Kelly knew Figueroa had it, and that Kelly had told him not to mention Figueroa's

involvement.

Thereafter, Restrepo made recorded telephone calls to Kelly and Figueroa, and arranged a meeting with Kelly and DEA agents who posed as Restrepo's friend and brother-in-law, all concerning Restrepo's desire to get in touch with Figueroa to get the money or the cocaine.

During the course of the investigation, Kelly's actions and statements formed the basis for the charges that he had more than mere knowledge of the kilogram of cocaine and had willfully and knowingly become a member of the conspiracy by giving advice and counsel to Figueroa in order for Figueroa to continue to violate the law. Kelly was arrested on June 24, 1987, and indicted the next day along with Figueroa and six others. At his request, Kelly was tried by the court separately from his co-defendants; the court found him guilty on April 6, 1988. He appealed, and we reversed his conviction on September 29, 1989, for insufficient evidence, improper exclusion of testimony, and improper failure of the district judge to recuse himself.

## II. ANALYSIS

A. *The Bivens Claims*

In this action, Kelly asserts that, during the course of their investigation of him, the DEA agents violated his constitutional rights under the Fourth, Fifth, and Ninth Amendments, and that his arrest and prosecution were illegal and his conviction invalid. These allegations state a claim for damages under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

The district court dismissed the *Bivens* claims as untimely-filed. The court applied Georgia's two-year personal injury statute of limitations, O.C.G.A. § 9-3-33, and held that the claims were barred because they were filed more than two years after they accrued—the day this court reversed Kelly's conviction. Kelly argues that the district court erred in holding his claims accrued on the date his conviction was reversed; he argues that his claims did not accrue until expiration of the time permitted for the United States to file a petition for a writ of certiorari to the Supreme Court.

This issue presents two separate questions: first, what is the applicable statute of limitations in a *Bivens* action; and second, when does that statute begin to run. We consider each in turn.

This circuit has not yet decided what statute of limitations is applicable in a *Bivens* action. All of the circuits which have considered this issue have decided that the same statute of limitations applicable to actions under 42 U.S.C. § 1983 should apply to *Bivens* actions. *Sanchez v. United States,* 49 F.3d 1329, 1330 (8th Cir.1995); *Kurinsky v. United States,* 33 F.3d 594, 599 (6th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 1793, 131 L.Ed.2d 721 (1995); *Van Strum v. Lawn,* 940 F.2d 406, 410 (9th Cir.1991); *Bieneman v. City of Chicago,* 864 F.2d 463, 469-70 (7th Cir.1988), *cert. denied,* 490 U.S. 1080, 109 S.Ct. 2099, 104 L.Ed.2d 661 (1989); *Chin v. Bowen,* 833 F.2d 21, 23-24 (2d Cir.1987).

We agree with this result. *Bivens* actions are quite similar to those brought under § 1983. As we noted in *Abella v. Rubino,* 63

F.3d 1063, 1065 (11th Cir.1995), "The effect of *Bivens* was to create a remedy against federal officers, acting under color of federal law, that was analogous to the section 1983 action against state officials. Thus, courts generally apply § 1983 law to *Bivens* cases." We reserved judgment on this issue in *Abella,* but we decide now to join our sister circuits and hold that a *Bivens* action is governed by the same statute of limitations as would a § 1983 action in that court.

In *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Supreme Court directed that the state limitation period applicable to personal injury actions should be applied to all actions brought pursuant to 42 U.S.C. § 1983. In accord with *Wilson,* we held in *Mullinax v. McElhenney,* 817 F.2d 711 (11th Cir.1987), that the Georgia two-year personal injury limitations period applies to § 1983 actions in a Georgia district court. *See* O.C.G.A. § 9-3-33. Accordingly, we hold that the district court's application of the Georgia two-year personal injury limitations period to the *Bivens* claims in this case was correct.

Deciding what statute of limitations applies to this action gets us only half way to our destination. Secondly, we must decide at what point the applicable statute begins to run.

A statute of limitations begins to run when the cause of action accrues. Accrual of a cause of action under 42 U.S.C. § 1983 is a question of federal law. *Mullinax,* 817 F.2d at 716. Recently the Supreme Court dealt with this issue in the context of § 1983 actions for damages attributable to an unconstitutional conviction or sentence. *Heck v. Humphrey,* --- U.S. ----, ----, 114

S.Ct. 2364, 2373, 129 L.Ed.2d 383 (1994).  Analogizing such actions

to those for malicious prosecution, the Court held:

> Just as a cause of action for malicious prosecution does not
> accrue until the criminal proceedings have terminated in the
> plaintiff's favor, so also a § 1983 cause of action for
> damages attributable to an unconstitutional conviction or
> sentence does not accrue until the conviction or sentence has
> been invalidated.

*Id.* at ----, 114 S.Ct. at 2374 (internal citations omitted).

We have previously held that the *Heck* rule applies equally to

a *Bivens* claim.  *Abella,* 63 F.2d at 1065.  *Accord Tavarez v. Reno,*

54 F.3d 109 (2d Cir.1995) (per curiam);  *Stephenson v. Reno,* 28

F.3d 26 (5th Cir.1994).  Thus, in *Bivens* actions which challenge

the validity of a conviction, the cause of action accrues when the

underlying conviction is reversed.

Since Kelly alleges that the investigation of him violated

his constitutional rights under the Fourth, Fifth, and Ninth

Amendments, and that his arrest and prosecution were illegal and

his conviction invalid, his *Bivens* claims challenge the validity of

his conviction and fall under the rule of *Heck.*  They accrued upon

"reversal" of his conviction.

Kelly's conviction was reversed on September 29, 1989.  The

present action was filed on December 17, 1991.  The claims,

therefore, appear to be time-barred.

Kelly argues, however, that his claims did not accrue until

the expiration of the time allowed for the filing of a petition for

certiorari, or sixty days.[1]  Furthermore, the government filed a

---

[1]At the time of the conviction's reversal, Supreme Court
Rule 20 provided a sixty-day period for filing a writ of
certiorari.

petition for rehearing of the reversal.  The filing of a petition for rehearing tolls the certiorari period until the date the petition is denied, or of the entry of a subsequent judgment on rehearing. *See Supreme Court Rule 20.4.*  The government's petition for rehearing was denied on November 30, 1989.  Although the government did not file a petition for certiorari, Kelly argues that his claims did not accrue until the expiration of the sixty days during which they could have filed a petition.  Adding these sixty days to the date of denial of the petition for rehearing—November 30, 1989—would mean that Kelly's claims did not accrue until January 30, 1989, and were filed within the two-year limitations period.

Kelly cites *Prince v. Wallace,* 568 F.2d 1176 (5th Cir.1978), in support of his argument.  In that case, after Prince's conviction was reversed, a petition for certiorari was filed and denied.  A motion for reconsideration of the denial was then filed. In considering the timeliness of Prince's subsequent § 1983 complaint, the Fifth Circuit wrote, that "under the facts of the instant case", the limitations period did not begin to run until the denial of the motion for reconsideration.  *Id.* at 1178.

*Prince,* however, preceded and does not interpret *Heck.* Furthermore, in that case, the statute of limitations was one year and the plaintiff's complaint was not filed until nineteen months after the denial of the motion for reconsideration of the denial of the petition for certiorari.  The complaint was untimely no matter when the statute of limitations began to run—after the reversal, after the petition for certiorari was denied, or after the motion

for reconsideration of that denial was denied.  Consequently, the statement in *Prince* that the statute of limitations began to run after the denial of the motion for reconsideration was *dicta.* Finally, the court clearly limited its language regarding the limitations period to the facts of that case.  For these reasons, we do not believe that *Prince* requires us to hold that, under *Heck,* "reversal" occurs only after the certiorari period has run.

Furthermore, we find no support for Kelly's theory.  On the contrary, most cases which have interpreted *Heck* assume that "reversal" means the date upon which the appeals court issues its opinion reversing a conviction.  *See e.g., Woods v. Candela,* 47 F.3d 545 (2d Cir.1995); *Pinaud v. County of Suffolk,* 52 F.3d 1139 (2d Cir.1995); *Guzman-Rivera v. Rivera-Cruz,* 29 F.3d 3 (1st Cir.1994); *Boyd v. Biggers,* 31 F.3d 279 (5th Cir.1994); and *McMillian v. Johnson,* 878 F.Supp. 1473 (M.D.Ala.1995); *Heller v. Plave,* 743 F.Supp. 1553 (S.D.Fla.1990) (citing *Prince* as support for this proposition).

We hold that "reversal" occurs prior to the expiration of the time permitted for the filing of a petition for certiorari.  Under *Heck* and *Abella,* a *Bivens* claim accrues on the date a court of appeals of competent jurisdiction reverses a conviction[2] and no

---

[2]We have considered whether "termination" of the criminal proceedings does not occur upon the date we reverse, but upon the issuance of the mandate, which would allow for the expiration of the time period for filing a petition for rehearing or of the denial of such a petition.  Although Fed.R.App.P. 36 clearly treats our opinion and its entry on the docket as the "judgment," it might be argued that no "reversal" has occurred until the mandate issues.

We decline to decide this issue, however, because it has not been raised by the parties and it does not affect

retrial is permitted. [3]  As Kelly's conviction was reversed on September 29, 1989, and his *Bivens* claims were not filed until December 17, 1991, they are time-barred.

B. *The Malicious Prosecution Claim*

In reversing Kelly's conviction, this court wrote:

> On the question of whether Kelly knowingly joined a criminal conspiracy to possess and distribute cocaine, the evidence, where it is not completely silent, supports little more than speculation and conjecture....  We find the evidence on [the aiding and abetting] count to be even weaker than that on the conspiracy charge.

*Kelly,* 888 F.2d at 741-42.

Kelly alleges the criminal prosecution against him was instituted without probable cause through a constitutionally and factually defective investigation calculated to harass, intimidate, and abuse and was conducted in a prejudicial manner.  He claims that the acts and omissions of the DEA officers proximately caused the malicious prosecution.  The district court entered summary judgment against him, holding that upon the undisputed facts of the

---

the outcome of this case (Kelly's *Bivens* claims were filed more than two years after the issuance of the mandate in his criminal prosecution).  This issue may be addressed at a later date when it is properly before the court.

[3]Traditionally, setting aside a conviction and remanding for re-trial or dismissal was termed a "vacation" of the conviction; "reversal" of a conviction meant no re-trial was permitted.  In this context, the Supreme Court's use of the term "reversal" is appropriate to signify the termination of criminal proceedings. As courts have come to use these terms without regard to this distinction, however, we take this opportunity to make clear that by "reversal" we mean without the possibility for retrial.  *Cf. Smith v. Holtz,* 879 F.Supp. 435 (M.D.Pa.1995) (§ 1983 claim accrued when claimant discharged from state custody and retrial barred rather than on date of prior order reversing conviction); *Brandley v. Keeshan,* 64 F.3d 196 (5th Cir.1995) (conviction set aside by grant of habeas corpus not a "termination" where state could retry claimant).  Where retrial is not an option, reversal is a termination of the prosecution.

case, there was sufficient probable cause as a matter of law to support Kelly's prosecution. We review grants of summary judgment *de novo. Fitzpatrick v. Atlanta,* 2 F.3d 1112, 1117 (11th Cir.1993).

Under the Federal Tort Claims Act (FTCA), state law determines the liability of an individual defendant. 28 U.S.C. § 1346(b); *Molzof v. United States,* 502 U.S. 301, 305, 112 S.Ct. 711, 714-15, 116 L.Ed.2d 731 (1992); *Newmann v. United States,* 938 F.2d 1258, 1261 n. 2 (11th Cir.1991). In Georgia, an action for malicious prosecution is governed by O.C.G.A. § 51-7-40, which provides:

> A criminal prosecution which is carried on maliciously and without any probable cause and which causes damage to the person prosecuted shall give him a cause of action.

To prevail on his a claim, Kelly must show: (1) prosecution for a criminal offense; (2) instigated without probable cause; (3) with malice; (4) under a valid warrant, accusation or summons; (5) which is terminated favorably to the plaintiff; and which (6) has caused damage to the plaintiff. *Wal-Mart Stores, Inc. v. Blackford,* 264 Ga. 612, 449 S.E.2d 293 (1994). Malicious prosecution actions are disfavored under Georgia law. *Day Realty Assocs., Inc. v. McMillan,* 247 Ga. 561, 277 S.E.2d 663 (1981).

"Generally, lack of probable cause shall be a question for the jury, under the direction of the court, [but] what facts and circumstances amount to probable cause is a pure question of law." *Barber v. H & H Muller Enterprises, Inc.,* 197 Ga.App. 126, 397 S.E.2d 563, 566 (1990) (internal quotation marks omitted). There is a substantial difference between the quantum of proof necessary

to constitute sufficient evidence to support a conviction and that necessary to establish probable cause. Although we characterized the evidence against Kelly at trial as supporting little more than "speculation and conjecture," this assessment does not mean that there was not probable cause to bring the charges.

Where the uncontradicted evidence shows that "there were some slight circumstances pointing to his guilt, though not enough to exclude every other reasonable hypothesis," there is no claim for malicious prosecution. *El-Amin v. Trust Co. Bank,* 171 Ga.App. 35, 318 S.E.2d 655, 658 (1984). *See also Wilson v. Thurman,* 213 Ga.App. 656, 445 S.E.2d 811 (1994). Kelly must show that "at the time of the prosecution, ... [defendants] could have had no reasonable grounds for believing [Kelly] to be guilty of the charge brought." *Monroe v. Sigler,* 256 Ga. 759, 353 S.E.2d 23, 24 (1987).

A grand jury indictment constitutes *prima facie* evidence that probable cause existed for the prosecution. *Agbonghae v. Circuit City Stores, Inc.,* 214 Ga.App. 561, 448 S.E.2d 484, 486 (1994). A jury conviction is conclusive of probable cause unless there was fraud. *Monroe,* 353 S.E.2d at 25. Since Kelly was indicted and convicted, he must show specific facts tending to show that probable cause did not exist for his arrest and that the prosecution was motivated by malice. *Agbonghae,* 448 S.E.2d at 486.

Kelly asserts that false testimony was given to the grand jury to obtain the indictment. If his indictment was procured on *knowingly* false testimony, it would not support a finding of probable cause. *Perry v. Brooks,* 175 Ga.App. 77, 332 S.E.2d 375 (1985).

Plaintiff alleges three incidents of fraudulent testimony to the grand jury:  (1) false testimony by Special Agent Augustine; (2) a mistranslation of a Spanish word;  and (3) false information on a DEA Report.   The district court's analysis of these allegations of fraud was careful and complete.  We agree with its conclusion that these allegations do not negate the probable cause established by the indictment.

1. *Augustine's Grand Jury Testimony.*

Kelly alleges three incidents related by Special Agent Augustine during his grand jury testimony were both false and misleading.  First, there was a discrepancy between Augustine's grand jury testimony and that given in a deposition regarding whether statements attributed to Kelly in the DEA Report were "verbatim."  Kelly fails, however, to identify any specific statements incorrectly attributed to himself, and, thus, has not met his burden of showing specific evidence of fraud.

Second, Kelly alleges fraud in Augustine's testimony regarding whether he was familiar with Kelly's voice.  Kelly offers no proof that Augustine had never heard Kelly's voice, however, and so again has not met his burden of proof on this issue.

Third, Kelly alleges Augustine mischaracterized a recorded phone call in his grand jury testimony.  Our review of the record supports Augustine's characterization for the grand jury.  The mischaracterization, if any, certainly did not rise to the level of fraud negating the indictment's finding of probable cause.

2. *Mistranslation of a Spanish Word.*

The second allegation of fraud concerns the alleged

mistranslation of the Spanish word "eh" in testimony to the grand jury. Kelly alleges that by translating "eh" as "O.K." a deliberately false meaning was conveyed to the grand jury that Kelly was involved in the drug conspiracy. The district court correctly notes, however, that, even if the word was translated incorrectly, the substance of the conversation was not altered. We agree.

3. *DEA Report.*

The DEA Report stated:

Kelly advised S/A Serna on the phone that they probably couldn't do anything *right now,* referring to the package [of cocaine] (emphasis added).

Kelly points out that his exact words, recorded secretly, were "I don't think we can do anything, but I'll meet with you and explain." He argues that the inclusion of the words "right now" materially alters his meaning and was a deliberate and malicious attempt to mislead the grand jury as to his involvement in the conspiracy.

We are not sanguine about the inclusion of the words "right now" in the report. Their inclusion lends some support to the inference that Kelly was willing to engage in criminal behavior, albeit if not "right now." We do not agree, however, that their inclusion materially alters the meaning of his statement—action is unlikely, but not impossible. Therefore, Kelly has not carried his burden of showing fraud in the Report.

Kelly also alleges that an agent's testimony to the grand jury that "in his opinion" Kelly was acting as a "barrier" for his client and "using his attorney-client privilege as something to

hide behind," corrupted the proceeding because it was false and highly prejudicial. An expression of opinion as opinion to the grand jury, however, does not mislead or materially misstate evidence. *Cf. Hylton v. American Ass'n for Vocational Instructional Materials, Inc.,* 214 Ga.App. 635, 448 S.E.2d 741 (1994).

Although we have reversed Kelly's conviction for insufficiency of the evidence, we do not find that probable cause for his prosecution was absent. The grand jury indictment's prima facie evidence of probable cause has not been rebutted by a showing of specific evidence that there was deliberate and malicious fraud perpetrated on the grand jury to induce them to indict Kelly.

### III. CONCLUSION

The *Bivens* claims in this action are barred by the statute of limitations, and were correctly dismissed. The claim for malicious prosecution is unsupported by specific evidence of fraud on the grand jury sufficient to overcome the presumption of probable cause which the indictment raises. Summary judgment was correctly granted by the district court to the defendants on this claim. Accordingly, the orders of the district court dismissing the *Bivens* claims, and granting defendants summary judgment on the malicious prosecution claim are

AFFIRMED.