Robert Wayne O'FERRELL and Mary
Ann O'Ferrell, Plaintiffs,

v.

UNITED STATES of America,
et al., Defendants.

No. CIV. A. 92–A–1450–S.

United States District Court,
M.D. Alabama,
Southern Division.

March 24, 1998.

G. William Gill, McPhillips, Shinbaum, Gill & Stoner, Montgomery, AL, for plaintiffs.

Kenneth R. Jones, Georgiana, AL, for Kenneth R. Jones, Trustee, intervenor-plaintiff.

David L. Allred, Kenneth E. Vines, Redding Pitt, U.S. Attorney, U.S. Attorney's Office, Montgomery, AL, for defendants.

### MEMORANDUM OPINION

ALBRITTON, District Judge.

This cause is before the court on the Motion to Dismiss, or in the alternative, Motion for Summary Judgment, filed by defendant FBI Special Agent Stephen E. Brannan on December 10, 1997. Brannan's motion and the response from the Plaintiffs rely on matters outside of the pleadings; therefore, the motion is due to be treated as a motion for summary judgment. *See* Fed. R. Civ. Proc. 12(b). For the reasons stated below, the motion is due to be GRANTED in part and DENIED in part.

### I. *SUMMARY JUDGMENT STANDARD*

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,*

477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.*, 477 U.S. at 323.

If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine issue material to the non-movant's case exists. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *see also* Fed.R.Civ.P. 56(e). A dispute of material fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Peppers v. Coates*, 887 F.2d 1493 (11th Cir.1989).

## II. FACTS

As is required at the summary judgment stage, the "facts" in this case, when in dispute, are viewed in the light most favorable to the non-movant Plaintiffs, the O'Ferrells. *Anderson*, 477 U.S. at 255. Defendant Brannan has not addressed a number of facts in this lawsuit because of the limited nature of his motion. Many of these background facts, which will no doubt be disputed at trial by the United States and Brannan are, for present purposes, uncontested. Some discussion of those facts is needed, however, to make sense of the present issues.

### Background.

This case arises from the FBI's self-described "large federal investigation" into a number of bombs sent through the mail in December 1989. *Brannan Decl.* A federal judge, Robert S. Vance of the Eleventh Circuit, was killed by one the bombs, as was an attorney from Savannah, Georgia, Robert E. Robinson. In addition to the deaths, Judge Vance's wife was injured by the bomb delivered to their home in Mountain Brook, Alabama. Further deaths were avoided when government agents intercepted and detonated two additional bombs—one sent to the Eleventh Circuit Court of Appeals in Atlanta, Georgia, and one sent to the NAACP's Regional Office in Jacksonville, Florida.

All of these bombs were thought to be linked, and indeed apparently were linked, by a number of writings. The FBI recovered mailing labels from some of the bombs. In addition, the person responsible mailed several death threat letters to various Eleventh Circuit judges and others, and mailed a letter claiming responsibility for the bombings. The FBI used these writings to jump start its investigation and to finger its first suspect, the Plaintiff in this case, Robert Wayne O'Ferrell.

The FBI allegedly was able to match these documents from the killer to documents typed by Mr. O'Ferrell. The documents from the O'Ferrells were found in the files of the Eleventh Circuit in Atlanta, Georgia, where Mr. O'Ferrell had appealed a lawsuit. *See O'Ferrell v. Gulf Life Ins. Co.*, 874 F.2d 819 (11th Cir.1989) (affirming without opinion). On the basis of this alleged match, a number of search warrants were issued for locations under the O'Ferrells' control—including their residence, automobiles, salvage business, and field lines and septic tanks—all located in New Brockton and Enterprise, Alabama. The execution of the warrants attracted a great amount of national television exposure, much of it linking Mr. O'Ferrell to the bombings.

FBI agents interrogated the Plaintiffs separately on several occasions about their involvement in the mail bombings. Plaintiffs allege that FBI interrogations were characterized by abusive, improper, and unlawful interrogation techniques. Further, the Plaintiffs have alleged that the FBI attempted to try them in the media through leaks and partial disclosures; that their business was filled with law officers and members of the media (when Plaintiffs were not forced to close the business); that they were not allowed to speak with one another by telephone without FBI monitoring; and that many of their personal belongings, including

religious items, were seized and retained by FBI agents for an unreasonably long period of time.

For all of the intense investigation of the O'Ferrells, the FBI was not able to build a case against Mr. O'Ferrell. Instead, the evidence apparently cleared him. On October 9, 1990, the United States Department of Justice notified the Plaintiffs that they no longer were considered "targets" of the mail bombings investigation. Plaintiffs have complained, however, that this was done without a public clearing of their name.

### The Lawsuit.

Because of the manner in which they were treated by the FBI, the failure of the government to publicly exonerate them, and the lasting effects of the intense investigation and media coverage on their marriage and business, the O'Ferrells filed a *pro se* lawsuit against the United States government and a number of unnamed defendants on November 20, 1992. On February 19, 1993, the court appointed counsel to represent the Plaintiffs.

After the appointment of counsel, the Plaintiffs filed their First Amended Complaint. In their Complaint and amendment thereof, the Plaintiffs asserted claims against the United States for breach of contract and various torts pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq.; and claims against unnamed government agents for constitutional violations pursuant to *Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Named as defendants were the United States and fictitious defendants A–Z.[1]

The status of the O'Ferrells' claims against the Government was discussed in a June 26, 1997, order and opinion of this court. The court granted summary judgment on a number of claims because of sovereign immunity and jurisdictional reasons. These included the claims for "use of the media, interference with business, negligent and/or wanton supervision, inappropriate statements, fraud," and improper monitoring of a telephone call. *O'Ferrell*, 968 F.Supp. 1519, 1542 (M.D.Ala.

1997). The court determined that the FTCA allowed 3 groups of claims to go forward against the United States, however. These are:

(1) claims for "trespass, outrageous conduct, and negligence based on trespass on the Plaintiff's business premises;"

(2) claims for invasion of privacy, "trespass, outrageous conduct, and negligence based on trespass on the Plaintiff's ... home;"

(3) and claims for "invasion of privacy, conversion, outrageous conduct, and negligence relating to the seizure of religious items."

*O'Ferrell v. U.S.*, 968 F.Supp. at 1519. All of these claims rest on, and were allowed to go forward because of, a genuine dispute whether the search warrants executed by the government against the O'Ferrells were the result of improper and unconstitutional actions. The court found evidence that the warrants "were obtained by intentionally or recklessly presenting false affidavits to the issuing magistrate judge as evidence of probable cause." *Id.*

### Legal Proceedings against Brannan.

On the same day that the court denied summary judgment to the United States, the court also ruled on a motion by the Plaintiffs to amend their complaint. The court held, among other things, that the Plaintiffs could amend their complaint to add Stephen Brannan—an agent of the FBI—as a defendant. *See O'Ferrell v. United States*, 174 F.R.D. 108, 109 (M.D.Ala.1997). Brannan was added as a defendant under a *Bivens* theory, which allows a Plaintiff to sue individual federal government agents for violation of a person's constitutional rights, analogous to the manner in which plaintiffs can sue state officials under 42 U.S.C. § 1983. *See Bivens*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The constitutional rights which Brannan is alleged to have violated include: unreasonable search and seizure, unconstitutional interrogation, unconstitutional invasion of privacy, and deprivation of liberty and

---

1. On October 27, 1993, the court granted Kenneth R. Jones's Motion to Intervene as Trustee of the Plaintiffs' bankruptcy estate.

property without due process of law. *O'Ferrell*, 174 F.R.D. at 109. The court noted then that there were questions regarding qualified immunity and the statute of limitations that would have to be addressed at a later date. *O'Ferrell*, 968 F.Supp. at 1542. The present motion for summary judgment by Brannan addresses those questions.

### The Facts regarding Brannan.

Stephen Brannan has been an FBI agent since 1972, and has worked out of the Birmingham office since 1984. *Brannan Declaration.* Brannan swore in an affidavit for a search warrant that he "had been advised that the same typewriter once used to prepare court documents in the *O'Ferrell v. Gulf Life Insurance Co.* also was used to prepare bomb package labels and threat letters in December of 1990." *Id.*[2] He now states that "[t]o the best of [his] knowledge and belief, all statements that [he] made in that affidavit were true and correct when [he] made them." *Id.* Further, Brannan has been present for testimony in the trial of Walter Leroy Moody (who was convicted of the bombings), wherein an FBI expert testified that the type was the same. *Id.* Brannan states further that, as a layman, he cannot discern any difference in the type. *Id.*

Regardless of the present statements of Brannan—which do serve to create a fact question—this court has determined before, that "a material issue of fact exists as to whether Brannan's statement of a typewriting match is false." *O'Ferrell*, 968 F.Supp. at 1532. Expert evidence was earlier submitted that the match alleged in the search warrant was, on its face, incredulous. A death-threat letter from the bomber was " 'typed on a . . . manual typewriter [with] a Pica 10 pitch . . . [that] is out of alignment as is evidenced by the dropped A, D, and E and the raised G.' " *Id.* (quoting from expert testimony). Comparative documents from O'Ferrell—a notice of appeal and envelope—were " 'typed on an electric typewriter in good condition that had a 12 pitch Elite style of type.' " *Id.* Further, the expert concluded that not only would no reasonably competent

expert conclude that these documents were from the same typewriter, but that also " 'the difference in type is so significant that the difference should be readily apparent to even a non-expert.' " *Id.*

The failure of a match is not the only important issue for present determinations, however. The time that the O'Ferrells became aware of this lack of a match is also important. Possible similarities between documents of the O'Ferrells and documents from the killer were the subject of an FBI interview of Wayne O'Ferrell on January 23, 1990. Mr. O'Ferrell was shown documents alleged to be from the bomber and documents which he admitted to writing. O'Ferrell states that these were not the documents which were relied upon to seek the search warrant, however. *R.W. O'Ferrell Affid.* According to contemporaneous FBI documents, at his interview Mr. O'Ferrell was shown a letter dated July 1988, typed by him and addressed to the Eleventh Circuit; and a package label from the bomb sent to Robert Robinson. *FBI Trans. of 1/23/90 interview with R.W. O'Ferrell.* O'Ferrell denied at that time that the documents were a match, and pointed out several inconsistencies. *Id.*

O'Ferrell insists in his testimony that the FBI did not show him the documents which actually served as the basis for the search warrant. O'Ferrell was shown a letter written by him to the Eleventh Circuit and an *envelope* addressed to Robert E. Robinson. *R.W. O'Ferrell Affid.* O'Ferrell was not shown the notice of appeal served by him on the Eleventh Circuit, nor was he shown the bomb package label from the Robinson bomb. *R.W. O'Ferrell Affid.* O'Ferrell freely admits that he disputed the match of the documents that were shown to him, and he was "aware that the FBI was claiming at that time that there was a match between the type of" the documents. *R.W. O'Ferrell Affid.* Nevertheless, O'Ferrell argues that the documents used to swear out the warrant are not those that he was shown; and that he is not aware until later—after the documents

---

**2.** Six documents are attached to the declaration of Brannan to show the alleged match. Three are allegedly from O'Ferrell: an envelope with his return address sent to the Middle District of Alabama, and two notices of appeal in *O'Ferrell*

*v. Gulf Life* sent to the Eleventh Circuit. Three others are from the killer: 2 mailing labels sent to Robert E. Robinson, and a death threat letter written to an anonymous "Judge."

were unsealed and viewed by an attorney and his expert—that there was not a match between the documents that formed the basis of the search warrant. *Id.*

Mary Ann Martin (the former Mrs. O'Ferrell) was not privy to the conversations between her husband and the FBI. *Martin Affid.* She states, however, that "based on the questions the FBI presented to [her, she] was aware that the FBI was claiming that some documents that [her] husband and/or [her]self had typed in the *O'Ferrell v. Gulf Life* case allegedly matched a bomb package label." *Id.* Further, she admits that she "was shown an envelope and a bomb package label," and that she "did not think that the envelope and the xeroxed copy of the bomb package label that was shown to me were a match." *Id.* Nevertheless, she states that she "did not know what to believe—other than the FBI were the experts so they must know what they are talking about." *Id.* In any event, she did not "know that the allegation of the match was the basis for the acquisition of a search warrant until early 1996" when the warrant was unsealed. *Id.*

## III. DISCUSSION

Defendant Brannan has moved for summary judgment on two grounds only. First, he asserts that he is entitled to qualified immunity for his actions regarding the procurement of a search warrant. Second, he asserts that the claims against him are barred by the statute of limitations.

### Qualified Immunity, Generally.

■ Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial. *Ansley v. Heinrich,* 925 F.2d 1339, 1345 (11th Cir. 1991). An official is entitled to qualified immunity if he is performing discretionary functions and his actions do " 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Lancaster v. Monroe County, Ala.,* 116 F.3d 1419, 1424 (11th Cir.1997). Courts are to follow a two-step analysis. First, the Defendants must show that they are performing an act within their discretionary authority. If that burden is satisfied, then it becomes the Plaintiffs' duty to prove that the Defendants violated clearly estab-

lished law. *Lowe v. Aldridge,* 958 F.2d 1565, 1570 (11th Cir.1992).

Plaintiffs in this case have not contested the fact that the Defendant was acting within his discretionary authority. That is not surprising; rather, it is quite often the case. *See, e.g., Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1149 (11th Cir.1994) (skipping over issue of discretionary function to discuss clearly established law); *see also Lancaster,* 116 F.3d at 1424 (noting that parties did not dispute whether act was discretionary function). The determination that an officer was acting within his discretionary authority is quite a low hurdle to clear. As noted by Judge Thompson in *Sweatt v. Bailey,* 876 F.Supp. 1571, 1576 (M.D.Ala.1995), the burden is made so easy "because of the level of generality at which this requirement must be determined." An official may show that an act was within his discretionary authority merely by showing that the acts "(1) 'were undertaken pursuant to the performance of his duties,' and (2) were 'within the scope of his authority.' " *Jordan v. Doe,* 38 F.3d 1559, 1566 (11th Cir.1994). It cannot be seriously contested that Brannan was undertaking this investigation as part of his duties as an FBI agent.

■ The question becomes, therefore, whether there is clearly established law. As put in *Lassiter,* was there law that had "earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors in the defendant's place, that 'what he is doing' violates federal law?" *Lassiter,* 28 F.3d at 1149. The qualified immunity analysis does not focus on analogies. Rather, the analysis "focuses on the actual, on the specific, on the details of concrete cases." *Id.* at 1149–50. The requirement to deny qualified immunity is not one of "factual rigidity." *Nicholson v. Georgia Dept. of Human Res.,* 918 F.2d 145, 147 (11th Cir.1990). Nevertheless, there is a strong burden of similarity. A "government agent's act [must be] so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law" would engage in it. *Lassiter,* 28 F.3d at 1149. To not require this would be to allow the Plaintiffs to "dis-

charge their burden" of defeating qualified immunity by "referring to general rules and to the violation of 'abstract' rights." *Id.* at 1150.

### Confusion over Plaintiff's Theory.

Plaintiffs' response to the Defendant's brief is rather short, covering only a total of five pages. Further, the Defendant did not bother to file a reply brief after Plaintiffs' response. The court has had some difficulty, therefore, understanding the extent to which the parties disagree, as well as understanding the questions that it is asked to consider. Based on the court's previous order and the present briefs, however, the court believes that the main complaint which remains against Brannan is that he 'lied' in his affidavit for the search warrant, either by affirmatively misrepresenting that there was a typewriting match, or by recklessly stating such. This requires an analysis, therefore, of the legal principles surrounding falsehoods placed into search warrant affidavits by officers of the law.

At least two other legal theories have received discussion in the briefs, however. The first is one which the Plaintiffs hint at: that there is something wrong with the fact that Brannan did not reveal some evidence of the lack of a match. This theory of recovery has been discredited by the Eleventh Circuit. In *Kelly v. Curtis,* 21 F.3d 1544, 1553 (11th Cir.1994), the Eleventh Circuit held that there is no clearly established law "that a police officer must turn over exculpatory evidence to a prosecutor when that officer has reason to believe that the prosecutor already has the evidence." In addition, in *Lowe v. Aldridge,* 958 F.2d 1565, 1571 (11th Cir.1992), qualified immunity was granted to police officers who did not present additional conflicting expert opinion to the court, when several expert opinions were offered to get a warrant. *Lowe* stands for the proposition that an officer seeking a warrant is "required to show only that he had reason to believe that a crime had been committed and that evidence would be found at the premises to be searched." *Id.* at 1570. The mere "existence of a dissenting opinion [by an expert] does not negate the probativeness of the incriminating evidence." *Id.* The Plaintiffs cannot pursue a theory that Brannan should have furnished the court with more, or different, evidence, when he sought the search warrant.

That is not the theory which the court believes Plaintiffs are pursuing, however. Rather, the court understands the Plaintiffs to be pursuing a complaint that Brannan actively misled the court, either affirmatively or recklessly, in his affidavit by stating that there was a match. That is analytically distinct from the consideration whether Brannan must reveal some exculpatory information. *See, e.g., Kelly v. Curtis,* 21 F.3d at 1552–54 (separately analyzing issues). In any event, there is no evidence of exculpatory information being before Brannan at the time of the affidavit, other than his own alleged knowledge of the falsity of the typewriting match. Rather, the thrust of the allegations against Brannan is that he did know or should have known that the *inculpatory* information that he furnished to the court was not true.

■ The second related proposition is cited by both parties as law applicable to this determination, and is really the Defendant's only statement of law in support of his motion for summary judgment on qualified immunity grounds. *See Def.'s Brief in Support of Motion for Summ. J. pp. 4–8 (entire discussion of qualified immun.)* That proposition is that it has been clearly established since the Supreme Court decided *Malley v. Briggs,* 475 U.S. 335, 345, 106 S.Ct. 1092, 89 L.Ed.2d 271, in 1986 that "qualified immunity does not protect an officer who seeks a warrant where 'a reasonably well-trained officer ... would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant.'" *Kelly,* 21 F.3d at 1553 (quoting *Malley,* 475 U.S. at 345). Alternatively stated, an officer of the law must have "arguable probable cause" to seek a warrant. *Swint v. City of Wadley, Ala.,* 51 F.3d 988, 996 (11th Cir. 1995). The determination is not unlike a sufficiency of the evidence determination; the court should "determine 'whether reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed.'" *Id.*

The court does not understand Plaintiffs to be saying that Brannan should have known that his affidavit did not establish probable cause, however. Indeed, the claim is not that the affidavit fails to "articulate ... the basis for [Brannan's] belief" or that it was merely "conclusory." *Kelly,* 21 F.3d at 1555. Rather, the court understands the Plaintiffs to be saying that Brannan intentionally falsified, or recklessly made, his affidavit so that it does, on its face, establish probable cause.

Cases which have discussed the arguable probable cause standard have not been concerned with alleged lies by the affiant officer. In *Lowe,* for example, there was "no dispute as to the facts in the possession of [the defendant police officers] at the time of the issuance of the search warrants." *Id.* at 1569. The question was whether those facts constituted arguable probable cause to pursue a warrant against the Plaintiffs. *Id.; see also Swint,* 51 F.3d at 996 (holding that there was not arguable probable cause to conduct extensive searches on night club and its patrons, where only evidence was of one patron selling drugs). Plaintiffs have not even attempted to show the court law from a factually-similar context that demonstrates that the affidavit at issue did not establish probable cause on its face and Brannan should have known that fact. Indeed, the Plaintiffs have not attached the affidavit as an exhibit nor referred to it. To the extent that Defendants raise this as their primary legal theory for summary judgment, their brief is largely irrelevant to the court's determinations.

Plaintiffs might, of course, be arguing that Brannan knew that the evidence of the typing match was false, and offered no more evidence, therefore, there was no arguable probable cause. To the extent that Plaintiffs are raising that theory, it depends on an analysis of the falsity of Brannan's statement. It merges into the following discussion. If he lied, and that was the only evidence offered, of course he knew there was no probable cause.[3]

### Applicable Clearly Established Law.

The question to be answered in this dispute is not whether Brannan withheld some evidence, or whether the affidavit, on its face, stated arguable probable cause to search the O'Ferrells' business and home. Rather, as noted (but sparsely discussed) by Plaintiffs on page 2 of their response, the question is: is Brannan entitled to qualified immunity if he misrepresented facts in the affidavit that he signed? Alternatively, is he entitled to qualified immunity if he 'lied?'

*Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), states the general law in this area. There, the Supreme Court held that an officer of the law may not submit a warrant affidavit which "contain[s] a deliberately or reckless false statement." *Id.,* 438 U.S. at 165(sic). As explained,

'[W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a truthful showing.' This does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true.'

*Id.* at 164–65. *Franks* clearly establishes, therefore, that an officer of the law may not make affirmative or reckless misrepresentations to the court in a warrant affidavit.

The Eleventh Circuit has noted, since the O'Ferrells' case began, that *Franks* clearly established, for qualified immunity purposes, that an officer may not make an "affirmative misstatement" in applying for a warrant. *See Kelly v. Curtis,* 21 F.3d at 1555 (holding that *Franks* had clearly established that a public official could not intentionally perjure himself in seeking warrant). The Eleventh Circuit interpreted *Franks* to apply to a circumstance mirroring that of the O'Ferrells. The Plaintiff had been alleged to be in possession of cocaine, but the substance was

---

**3.** In connection with the prior summary judgment order, evidence was offered that there was not probable cause to search the O'Ferrells' property without the typewriting match. *O'Ferrell,* 968 F.Supp. at 1534.

shown by a lab report not to be cocaine. As stated by the Eleventh Circuit:

> If [the defendant police officer] knew of the contents of the lab report—and for present purposes we must assume that she did—then the information she swore to in the affidavit was not 'believed or appropriately accepted by the affiant as true. [The defendant's] affirmative misstatement violates *Franks.* Accordingly, [the defendant] is not protected by qualified immunity from [the plaintiff's] section 1983 ... claim.

*Kelly,* 21 F.3d at 1555.[4]

On the basis of *Franks,* qualified immunity does not protect Brannan if the Plaintiffs can prove that he affirmatively misrepresented the truth of the match. This court has already determined, in its previous order, that "a material issue of fact exists as to whether Brannan's statement of a typewriting match is false." *O'Ferrell,* 968 F.Supp. at 1532. If the Plaintiffs can show that "the FBI laboratory or a government agent did not advise Brannan that there was a match, Brannan's statement that the FBI laboratory found a match would be a deliberately false statement" by Brannan. *Id.* at 1533. Alternatively, if the Plaintiffs can prove that Brannan knew that there was not a match from viewing the evidence, but testified that there was a match, then the information which he "swore to in the affidavit was not 'believed or appropriately accepted by the affiant as true.' " *See Kelly,* 21 F.3d at 1555 (quoting *Franks,* 438 U.S. 154, 165–66, 98 S.Ct. 2674, 57 L.Ed.2d 667) Drawing all inferences in favor of the Plaintiffs, the court is not able to

determine at this time that there is no dispute regarding Brannan making affirmative misstatements in his affidavit for the search warrant. Summary judgment is denied under this theory. Brannan may be liable if he can be shown to have affirmatively misrepresented the truth.[5]

■ Brannon may not be held liable, however, if all that can be shown is that he was reckless in his representations. Although the Supreme Court established as a principle of law that reckless misrepresentations are improper, the Court did not establish what constitutes "recklessness" so as to put a reasonable officer on notice for qualified immunity purposes. The Eleventh Circuit stated in 1994 that there was not—even up until that time—a bright line difference in the case law "between 'reckless' and merely 'negligent' disregard for the truth" in the context of an officer swearing to an affidavit. *Kelly,* 21 F.3d at 1554. Since qualified immunity analysis requires that the law be close to "crystal clear" in order to deny qualified immunity, and the law was not clear in defining what is reckless, the officer in *Kelly* was "protected by qualified immunity from this theory of recovery." *Id.* ("In light of [previous] cases, a reasonable officer might not have known that he was acting recklessly, rather than negligently, in asserting without investigation that no lab report had been received.") If the law was not clear enough to deny qualified immunity on the recklessness theory by 1994; then, even more so, it was not clear in 1990. Brannan is protected by qualified immunity from a showing that

---

4. This court cannot, of course, rely on *Kelly,* from 1994, to clearly establish the law which Brannan was charged with following in 1990. *Kelly* stands for the proposition, however, that *Franks* clearly established in 1978 that the law would not allow affirmative misrepresentations. The court merely relies on the Eleventh Circuit's interpretation of *Franks* to bolster its interpretation. *Franks* was as clear in 1990 as it was in 1994.

    *Franks* was issued in the context of a suppression hearing, not a § 1983 suit. In any event, however, prior to 1990, the Supreme Court had determined that the standards of suppression hearings governed in § 1983 suits as well. *Malley v. Briggs,* 475 U.S. 335, 344, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) ("we hold that the same standard of objective reasonableness that we applied in the context of a suppression hearing ...

defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest").

5. The court notes that it is only denying qualified immunity on this ground. Brannan, even though qualified immunity is denied, "may yet prevail on those grounds at or after trial on a motion for a judgment as a matter of law." *Kelly v. Curtis,* 21 F.3d 1544, 1546 (11th Cir.1994). Further, this court may, " 'when needed, ... use special verdicts or written interrogatories to the jury to resolve disputed facts before the judge rules on the qualified-immunity question.' " *Id.* at 1547 (citations omitted); *see also Swint,* 51 F.3d at 992 ("Any qualified immunity defenses that do not result in summary judgment may be renewed at trial, where the actual facts will be established.").

he was reckless in his statements on the search warrants.

To sum up, therefore, Brannan may be held liable—qualified immunity must be denied—because there is a factual dispute as to whether Brannan affirmatively misrepresented the typewriter match to the magistrate to seek the search warrant. Brannan may not be held liable—qualified immunity attaches—to the extent that the Plaintiffs wish to show that Brannan was merely reckless in his representations. That is the law as established in *Franks*, and the law which is applicable to this case. The question of whether there was arguable probable cause, the main subject of discussion by Brannan, merely merges into this question of whether Brannan misled the court.

### Statute of Limitations.

█ Even despite the lack of qualified immunity defense for any intentional misstatements to the court, Brannan would still be entitled to summary judgment if he could show that the statute of limitations had run by the time the O'Ferrells brought suit against him. The facts which form the basis of this suit began in early 1990 with the investigation and search of the O'Ferrells' business and home. Brannan was not added as a Defendant until 1997.

*Mullinax v. McElhenney*, 817 F.2d 711 (11th Cir.1987) is both legally and factually on point. *Mullinax* discusses the general law which applies to the statute of limitations in a § 1983 action. The "length of the limitations period, and the closely related questions of tolling and application, are ... governed by state law." *Id.* at 716, quoting *Wilson v. Garcia*, 471 U.S. 261, 269, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Both parties agree that two years is the applicable period under Alabama law. *See* Ala.Code Ann. § 6–2–38(1); *McKissick v. Busby*, 936 F.2d 520 (11th Cir.1991); *Kelly v. Serna*, 87 F.3d 1235, 1238 (11th Cir.1996). The length of the period is not the important question in this case, however. The crux of the dispute is over accrual.[6] If the O'Ferrells' claim against Brannan accrued in 1990, then it would be barred. If it accrued when the search warrant was unsealed in 1996, then it would have been filed within the statute of limitations.

This question of accrual—when the two year period for the O'Ferrells began to run—is a question of federal law. The two year period to file a suit:

> does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights. Thus Section 1983 actions do not accrue until the plaintiff knows or has reason to know that he has been injured. Nor will a Section 1983 action accrue until the plaintiff is aware or should have been aware who has inflicted the injury.

*Mullinax*, 817 F.2d at 716 (internal citations omitted).[7] Obviously, the O'Ferrells were aware that an injury had been inflicted on them prior to the time of the filing of the Brannan claim. Mr. O'Ferrell suspected it in 1990, when he was told by the FBI that certain documents matched. He disputed the match even then.

Mr. O'Ferrell was not shown the documents which were the basis for the FBI warrant, however. This is a contested point by Brannan, who insists that he did show O'Ferrell the documents. The point is disputed, however, and must be viewed in favor of Mr. O'Ferrell at this time given the rules of summary judgment. In any event, it is uncontested that the search warrants were not unsealed until 1996. Until then, Mr. O'Ferrell could not have known who all had sworn to the match of the documents, or exactly what they swore to. There is at least a dispute, therefore, whether the O'Ferrells could have realized the nature of the injury

---

**6.** Plaintiffs have not asserted that the statute should be tolled.

**7.** This court is aware of a district court approval of a magistrate's recommendation, *Triestman v. Probst*, 897 F.Supp. 48 (N.D.N.Y.1995), which holds that the statute of limitations in a *Bivens* action accrued when the search was conducted, not when the search warrant was unsealed and the falsity learned. The district court in New York was applying a different standard for accrual in its case, however. The Eleventh Circuit standard, as stated above, requires knowledge of the nature of the injury and the wrongdoer. The standard applied by the New York court required only that the "plaintiff know[] or ha[ve] reason to know of the injury which is the basis of his action." *Id.* at 49–50.

or who inflicted the injury until the affidavit was unsealed.[8]

Ms. Mullinax, the victim of entrapment attempts by Clayton County, Georgia, law enforcement officials, was aware that someone was trying to entrap her more than two years before her complaint. *Mullinax*, 817 F.2d at 717. She was not aware, however, of the facts of one entrapment attempt, until she discovered a package in a post office box over which she had control. *Id.* Further, she was not aware of the involvement of the District Attorney and his assistant until she was arrested. *Id.* The facts of that case, and the court's decision to allow her action there, lead this court to believe that the present action must be allowed as well. Mr. O'Ferrell is in a similar position. He knew, as did Ms. Mullinax, that something was wrong, if only because the FBI was investigating him. Further, he knew that there were problems with the typewritten matches that he was shown. His knowledge was limited until he saw the search warrant, however—limited such that the court may not hold that as a matter of law the statute of limitations began to run two years before Brannan was sued.[9]

One especially revealing analysis by the Eleventh Circuit in *Mullinax* concerns the

reason for the Plaintiff's lack of knowledge that the D.A. and his assistant were part of the plot to entrap her. One reason for her ignorance was that the person who actually carried out the D.A.'s instructions "misrepresented himself." *Mullinax*, 817 F.2d at 717. Misrepresentations also play a part in the O'Ferrells' ignorance in this case. Although Brannan did not misrepresent himself, apparently he did misrepresent to O'Ferrell the documents which the FBI relied upon to get the search warrant (at least if one views the evidence in the light presented by the nonmovant O'Ferrells). Brannan showed O'Ferrell a letter that O'Ferrell had written to the Eleventh Circuit, and an envelope that someone had sent to Robinson (the attorney killed by a bomb). The search warrant, however, was based on an envelope and notice of appeal typed by O'Ferrell and sent to the Eleventh Circuit (not a letter), and some bomb package labels and a death threat from the bomber (not an envelope). There is at least a fact question, therefore, that O'Ferrell was duped as to the basis for the search warrant due to misrepresentations in the interview.

In sum, there are material issues of fact which prevent the court from ordering sum-

8. Brannan has not argued in his summary judgment brief that O'Ferrell waited too long to try to unseal the warrant and affidavit. Perhaps this is an issue to be raised at trial. Brannan does state in his declaration that "Mr. O'Ferrell has known my identity as the case agent and affiant for the search warrants since January 22, 1990." Brannan does not state the basis for this knowledge, however, and the court cannot take it as admissible evidence since it appears to be little more than conclusory supposition about O'Ferrell's state of mind. *See* Fed. R. Civ. Proc. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein"); *see also* Fed.R.Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter").

9. Brannan stated in a footnote in his brief filed on December 10 that "[n]o answer or objection has been made" to certain requests for admissions served by the United States (not Brannan) prior to the Rule 16 conference in this case and that "therefore the matters are deemed admitted." *See Brannan's Brief in Supp. Mot. for Summ. J., n. 3.* The requests were subsequently

answered. Brannan has not objected to the filing of these answers, nor has he reasserted in a reply brief that these matters were deemed admitted pursuant to Fed. R. of Civ. Proc. 36. (Indeed, no reply brief or motion to strike, or other pleading regarding these answers, has been filed at all; and Brannan's only objection in the footnote appears to be the failure of the Plaintiffs to answer yet, not the timing of the answer). This court is not prepared to resolve this dispute—if there even is a dispute—given its limited role in discovery and the failure of the parties to fully address these issues.

Some of the factual matters, if deemed admitted, would contradict the O'Ferrells' testimony regarding which documents they were shown by the FBI in 1990, and what they knew about Brannan's role in the procurement of the search warrant. Even if these matters were admitted, however, there would still be a fact dispute regarding the accrual of the O'Ferrells' cause of action against Brannan. Whatever the O'Ferrells knew in 1990, they could not have known the content the search warrant—and the alleged falsehoods which were contained therein—until the warrant was unsealed. That would, even by itself, create a fact question whether the Plaintiffs were reasonably prudent in protecting their rights.

mary judgment in Brannan's favor because of the statute of limitations. Whether the O'Ferrells could reasonably have known of the wrong and wrongdoer before they did remains an issue for resolution at trial. *See, e.g., Delancy v. St. Paul Fire & Marine Ins. Co.,* 947 F.2d 1536, 1540 (11th Cir.1991) (noting that whether plaintiff "should have discovered the object [left inside him during surgery] before he did remained a fact question for the jury" after discovery). Summary judgment on the basis of the statute of limitations is due to be denied.

## IV. CONCLUSION

Brannan's motion for summary judgment was filed on only two limited grounds. The first, qualified immunity, can support summary judgment to the extent Plaintiffs contend that Brannan recklessly misrepresented facts in his affidavit for a search warrant. It cannot support summary judgment to the extent that Plaintiffs intend to prove that Brannan affirmatively misrepresented the truth in his affidavit.

The second ground of Brannan's motion, the statute of limitations, also does not support summary judgment. There is a lingering question whether the O'Ferrells were reasonable in failing to discover that Brannan's misstatements in the search warrant affidavit—which was not unsealed until a year and a half before the claim was filed—were the source of their problems.

A separate Order will be entered in accordance with this Memorandum Opinion.