[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 24, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13586
Non-Argument Calendar

_____

D. C. Docket No. 06-00507-CV-T-30-MAP

MARK FRONCZAK,

Plaintiff-Appellant,

versus

PINELLAS COUNTY, FLORIDA, et al.,

Defendants,

ANTHONY G. STEVENS, individually,
JIM COATS, in his capacity as the
Sheriff of Pinellas,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 24, 2008)

Before CARNES, BARKETT and PRYOR, Circuit Judges.

PER CURIAM:

Mark Fronczak appeals the summary judgment in favor of Detective Anthony Stevens and Sheriff Jim Coats and against Fronczak's complaint of false arrest. See 42 U.S.C. § 1983. The district court concluded that the detective possessed probable cause to arrest Fronczak. We affirm.

## I. BACKGROUND

During November 2003, M.L. noticed drops of blood in the underwear of her seven-year-old daughter, C.L. M.L. questioned C.L. how long she had been bleeding and C.L. admitted she did not know and said for a "couple of days." Concerned that the child might be showing signs of early puberty, M.L. took C.L. to her pediatrician for an examination. C.L. denied any sexual abuse.

In January 2004, M.L. noticed a reoccurrence of vaginal bleeding by C.L. who again denied any abuse. A treating physician, Dr. Frank Diamond, recommended a genital examination. In April 2004, when C.L.'s mother noticed a third episode of bleeding, C.L. underwent a gynecological examination by the Child Protection Team at Help A Child, Inc. that revealed scarring and damage to C.L.'s hymen that was consistent with sexual abuse. After this examination, C.L. spontaneously disclosed to her mother that she had been fondled and digitally

2

penetrated by her music teacher, Fronzcak. The Child Protection Team disclosed its findings to the Pinellas County Sheriff's Crimes Against Children Unit. Blood was also discovered in the underwear of C.L.'s older sister, I.L., who did not attribute her condition to abuse.

Detective Stevens reviewed the gynecological findings and interviewed C.L. at the Sheriff's office. The detective questioned C.L. about the difference between the truth and a lie, and C.L. responded that she understood the importance of being truthful. C.L. explained that Fronczak called her to the back of the classroom during music class and, while she was seated behind the other children, used one arm to pin her on his lap. Using a stuffed animal, C.L. demonstrated for Detective Stevens where and how Fronczak touched her three times outside her skirt and how, on one occasion, Fronczak slid his hand under her skirt, around her underwear, and digitally penetrated her with two of his fingers. C.L. traced her hand and showed the detective how far Fronczak inserted his fingers into her vagina and stated that the touching was "[f]reaky," "felt gross," and hurt her. When asked why she did not disclose the abuse, C.L. said she was "afraid" Fronczak would find out. C.L. admitted that she had seen her older sister I.L. masturbate, but stated that she only touched herself to wipe after using the toilet.

C.L.'s mother recalled that C.L. once had described Fronczak as "creepy"

3

and had complained about sitting on Fronczak's lap. C.L.'s mother dismissed the comment after her older daughter, I.L., said she had never sat on Fronczak's lap and she did not notice C.L. undergo any behavioral changes. C.L.'s parents acknowledged that I.L. was allegedly sexually abused by a babysitter. I.L. denied the abuse and the individual did not return to C.L.'s house. I.L. told Detective Stevens that she saw C.L. sitting on Fronczak's lap. I.L. also said that she witnessed another instance where another student was sitting on Fronczak's lap; that student denied any contact with Fronczak.

Detective Stevens interviewed Fronczak, who initially denied that any child had sat on his lap, but acknowledged that, on one occasion, a second-grade girl once "just plopped herself on his lap." He stated that a few fifth-grade students had accused him of misconduct the previous school year and, for that reason, he routinely left the door to his classroom open. When questioned specifically about C.L., Fronczak denied any wrongdoing and stated that C.L. sat beside him on a bench to play the piano.

Detective Stevens and three other Pinellas County officers interviewed 280 students in the school. In a series of initial and follow-up interviews, 71 children said that they had seen other children sitting on Fronczak's lap and 20 stated that they had sat on Fronczak's lap. One student who was allegedly an eyewitness to

4

C.L.'s abuse told Detective Stevens about a minor boy seen sitting on Fronczak's lap. The boy denied any contact with Fronczak. Another student reported that another student, D.R., was allegedly abused by Fronczak. D.R. was later interviewed at the Pinellas County Sheriff's Office and stated that Fronczak had rubbed his hand over the zipper area of her shorts or jeans while she sat on his lap. Several students and a few teachers also reported that Fronczak's classroom door had been closed on occasion.

Fronczak was suspended from his teaching position. He turned himself in to authorities without an arrest warrant on April 28, 2004. Fronczak was later acquitted of the capital sexual abuse of C.L.

## II. STANDARD OF REVIEW

We review a summary judgment de novo. Lowe v. Aldridge, 958 F.2d 1565, 1569 (11th Cir. 1992). The party that moves for summary judgment must establish that the pleadings and evidence establish there exists no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); Celotex v. Catrett, 477 U.S. 371, 325, 106 S. Ct. 2548, 2554 (1986). "[T]o survive the motion, the non-moving party must demonstrate that there is 'evidence from which a jury might return a verdict in his favor.'" Lowe, 958 F.2d at 1569.

# III. DISCUSSION

The existence of probable cause creates "an absolute bar to a section 1983 action for false arrest." Marx v. Gumbinner, 905 F.2d 1503, 1506 (11th Cir. 1990). Probable cause to arrest exists when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed . . . an offense." Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998)  (quoting Williamson v. Mills, 65 F.3d 155, 158 (11th Cir. 1995)) (internal quotation marks omitted).  This standard is practical and applied with the understanding that, if a police officer conducts a reasonable investigation, his ultimate judgment rests on the "probabilit[y]" of guilt "as understood by those versed in the field of law enforcement." Illinois v. Gates, 462 U.S. 213, 231–32, 103 S. Ct. 2317, 2328–29 (1983).  In this case, Detective Stevens's conduct is judged by his education and experience in the field of child sexual abuse.

Detective Stevens had probable cause to arrest Fronczak.  Detective Stevens began his investigation based on gynecological evidence that established seven-year-old C.L. had been sexually abused.  C.L. spontaneously disclosed to her mother after the examination that her music teacher, Fronczak, had fondled and digitally penetrated her while sitting on Fronczak's lap during class.  C.L. repeated

these allegations to Detective Stevens during a private, non-suggestive interview. Fronczak, who had been investigated the previous school year for sexually abusing some fifth-grade students, provided inconsistent responses about his physical interaction with his elementary school students. Detective Stevens enlisted three other officers and used a two-tiered interview process to question a substantial number of elementary school students. About one quarter of students interviewed, 71 out of 280 students, said they observed other students sitting on Fronczak's lap. One student, D.R., stated that Fronczak fondled her in a manner similar to that reported by C.L. Although some question existed as to when C.L. was abused, Detective Stevens could reasonably rely on the medical evidence, C.L.'s statement, and other information gathered during the interview process that C.L. had been abused by Fronczak.

Fronczak argues that Detective Stevens conducted an inadequate investigation and failed to consider contradictions in the evidence. Fronczak relies on C.L.'s earlier non-conclusive medical examinations, inconsistencies in the physical evidence and testimony given by classmates and teachers, and the detective's failure to question a wider circle of individuals about C.L.'s credibility. Fronczak, in essence, asks this Court to require an investigating officer to "take 'every conceivable step . . .to eliminate the possibility of convicting an innocent

7

person" and ignore the probable cause standard to amass convincing proof of guilt. Rankin, 133 F.3d at 1435–36.

Fronczak's argument is based on a misunderstanding of the nature of probable cause. His argument ignores the practicalities of the investigatory process and the principle that an investigating officer can reasonably rely on a victim's criminal complaint. See id. at 1441; see also Fla. State § 794.022(1) ("The testimony of the victim need not be corroborated in a prosecution under § 794.011."). Detective Stevens was not responsible for preparing a defense of Fronczak.

Detective Stevens possessed physical evidence that C.L. had been sexually abused and she unequivocally identified her assailant as Fronczak. Other evidence also suggested Fronczak's guilt, including statements from other students, one of whom also identified Fronczak as her abuser. The record establishes no genuine issue of material fact that Detective Stevens had probable cause to arrest Fronczak.

## IV. CONCLUSION

The dismissal of Fronczak's complaint is **AFFIRMED.**