[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11629
Non-Argument Calendar
_____

D.C. Docket No. 4:12-cv-00292-HLM

BRANDON R. CARTER,

                                        Plaintiff - Appellant,

versus

RANDY GORE,
a City of Rome Police Officer,
CITY OF ROME,
Jointly and Severally,
J. NELSON,
Floyd County Deputy, Individually,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(February 28, 2014)

Before HULL, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Brandon R. Carter was arrested for shoplifting at a Pawn Mart in Rome, Georgia. The warrant for his arrest was obtained on an affidavit by Randy Gore, a police officer with the City of Rome. Officer Gore's affidavit stated that Carter assisted a co-perpetrator "by distracting store employees while the co-perpetrator took possession of a diamond ring valued at $9,000.00." Carter spent more than sixty days in jail after his arrest before the charges were dismissed on motion by the state. Carter then filed a complaint against Officer Gore, J. Nelson, the deputy who arrested him, and the City of Rome stating claims pursuant to 42 U.S.C. § 1983 and Georgia law claims of illegal arrest, false imprisonment, and intentional infliction of emotional anguish. The district court dismissed Carter's Amended Complaint with prejudice, finding that he failed to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). On appeal, Carter maintains that he pleaded sufficient facts to support each of his substantive claims.

We review de novo the district court's grant of a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its

2

face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted).

After careful de novo review, we agree with the district court that Carter's Amended Complaint, "at most, contains legal conclusions and mere conclusory allegations, which are insufficient to state a viable claim for relief" as to the claims against defendants Nelson and the City of Rome, and the Georgia state law claims against Gore. Therefore, the district court properly dismissed those claims with prejudice.

We determine, however, that Carter's Amended Complaint contains sufficient allegations to survive a motion to dismiss on his § 1983 claim against Gore. Before turning to the sufficiency of Carter's factual allegations, we must first determine whether those allegations make out a prima facie § 1983 claim against Gore and whether Gore's qualified immunity defense can be defeated.

### I.  Carter's § 1983 Claim

The district court dismissed Carter's claim in part because if Carter's "arrest occurred pursuant to an arrest warrant, then he cannot state a viable § 1983 claim for false arrest or false imprisonment." Instead, the district court held that Carter could only make out a claim for malicious prosecution, which is the constitutional tort available to people who have been wrongfully arrested pursuant to legal process. The district court then concluded that Carter's claim against Gore for

3

malicious prosecution must fail because Carter failed to allege that Gore "had any control over [Carter's] detention once [he] was arrested and placed into custody." Since Carter's only available claim was for malicious prosecution, and his factual allegations against Gore only related to his arrest but not his detention and prosecution, the district court concluded that the claims against Gore must be dismissed.

Given that Carter was arrested pursuant to a warrant, the district court properly concluded that Carter's only available claim against Gore under § 1983 was for malicious prosecution. In *Heck v. Humphrey*, the Supreme Court distinguished false arrest from malicious prosecution, stating, "unlike the related cause of action for false arrest or imprisonment, [malicious prosecution] permits damages for confinement imposed pursuant to legal process." 512 U.S. 477, 484, 114 S. Ct. 2364, 2371 (1994). The issuance of a warrant—even an invalid one as Carter alleges was issued here—constitutes legal process, and thus, where an individual has been arrested pursuant to a warrant, his claim is for malicious prosecution rather than false arrest. *See Calero-Colon v. Betancourt-Lebron*, 68 F.3d 1, 4 (1st Cir. 1995) (holding adopted by the Eleventh Circuit in *Whiting v. Traylor*, 85 F.3d 581, 585 (11th Cir. 1996)); *see also Joyce v. Adams*, 2007 WL 2781196, at *4 (S.D. Ga. Sept. 20, 2007) ("*Regardless of the validity of the warrant*, plaintiff's allegations support a § 1983 malicious prosecution claim rather

4

than a § 1983 false arrest claim." (emphasis added)).  In such circumstances, the Eleventh Circuit "has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983."  *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003); *see also Joyce*, 2007 WL 2781196, at *4 (recognizing malicious prosecution as a cognizable § 1983 claim).

Having identified the proper claim, the district court erroneously concluded that Carter's complaint did not state a claim for malicious prosecution against Gore.  First, Carter's Amended Complaint specifically alleges malicious prosecution against Gore: "Defendant Gore caused a warrant to be issued for [Carter's] arrest for committing a crime in the Pawn Mart in Rome, without probable cause[, and Carter] was arrested, imprisoned and *maliciously prosecuted*."  (Emphasis added.)  More importantly, and contrary to the district court's assertion, "ha[ving] control over [Carter's] detention once [he] was arrested and placed into custody" is not necessarily an element of malicious prosecution.  Indeed, in *Kelly v. Curtis*, we held an officer liable for malicious prosecution under § 1983 where she secured an arrest warrant without probable cause, without any discussion of subsequent control over the suspect or further participation in his prosecution.  21 F.3d 1544, 1555 (11th Cir. 1994).  Similarly, in *Whiting*, we held that merely by securing an arrest warrant without probable cause, regardless of

5

subsequent detention, a "Fourth Amendment violation . . . analogous to the tort of malicious prosecution[]" occurs.  85 F.3d at 586.

Further, an officer who secures an arrest warrant without probable cause is liable for all foreseeable injuries flowing from the officer's initial act, regardless of further involvement.  *Id.* (holding that the suspect may sue for "injuries caused by the unlawful seizure[, which] may include those associated with the prosecution"); *see also Malley v. Briggs*, 475 U.S. 335, 345, 106 S. Ct. 1092, 1098 (1986) (holding that § 1983 liability is premised on holding people responsible for the natural consequences of their actions and that liability for the consequences of an arrest flow naturally from filing an affidavit).  Thus, contrary to the district court's suggestion, an officer's liability for malicious prosecution flows from initially securing an invalid warrant, and liability extends to foreseeable injuries related to subsequent seizure, detention, and prosecution.

Carter's Amended Complaint therefore alleges a viable § 1983 claim for malicious prosecution against Gore, who allegedly secured an arrest warrant without probable cause, causing Carter to be detained for more than sixty days. The fact that Gore played no further part in Carter's subsequent detention does nothing to undermine this claim.

## II.  Qualified Immunity

6

Gore raised a qualified immunity affirmative defense in his motion to dismiss. Qualified immunity shields government officials performing discretionary functions from § 1983 suits unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515 (2002) (internal quotation marks omitted). Government officials bear the initial burden of showing that their allegedly unconstitutional acts occurred within the scope of their discretionary authority. *Wood*, 323 F.3d at 877. This burden is easily met here, as Gore was clearly acting within the scope of his discretionary authority as a police officer by investigating and securing an arrest warrant in response to reported criminal activity.

The burden then shifts to the plaintiff to show that the defendant violated a constitutional right *and* that the constitutional right was clearly established at the time of the alleged violation. *See Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818 (2009) (granting lower courts discretion to analyze the two distinct components of plaintiffs' burden in either order). A fair reading of Carter's Amended Complaint reveals two possible constitutional violations.

## A. Perjurious Statements in Support of a Warrant

First, Carter alleges that Gore violated his constitutional rights by "fabricating evidence" against him. In *Franks v. Delaware*, 438 U.S. 154, 165–66,

7

98 S. Ct. 2674, 2681 (1978), the Supreme Court established the constitutional right to be free from officers making "perjurious or recklessly false statements in support of a warrant." *Kelly*, 21 F.3d at 1554. The Court made clear that statements made in support of a warrant need not actually be true, but they needed "to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Franks*, 438 U.S. at 166, 98 S. Ct. at 2681. In *Franks*, the officer's misstatements were used to secure a *search* warrant. *Id.* We extended the holding of *Franks* to cases involving *arrest* warrants in *United States v. Martin*, 615 F.2d 318, 327–29 (5th Cir. 1980);[1] *see also Kelly*, 21 F.3d at 1554 (recognizing that the Constitution prohibits officers from making perjurious or recklessly false statements to secure arrest warrants).

In *Kelly*, we determined that only part of the constitutional rule announced in *Franks* is sufficiently clear to defeat qualified immunity. *Kelly*, 21 F.3d at 1554. An officer loses qualified immunity if the plaintiff can prove that the officer perjured himself—that is, put forth information he did not believe or accept as true—in order to obtain a search warrant. *Id.* An officer does not lose qualified immunity, however, if all the plaintiff can prove is that the officer made recklessly false statements in order to obtain a search warrant. *Id.* We explained that the blurry line between reckless misstatements, which violate the rule in *Franks*, and

---

[1] In B*onner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

8

negligent misstatements, which do not, renders this portion of *Franks* insufficiently clear to defeat qualified immunity. *Id.*

Therefore, for Carter to defeat Gore's qualified immunity defense by showing a violation of the rule announced in *Franks*, Carter's pleading must allege that Gore perjured himself. Carter's Amended Complaint alleges that Gore "fabricated evidence," which implies that Gore put forward evidence he did not believe or accept as true. This allegation, if plausible, states a constitutional violation that defeats Gore's qualified immunity.

## B.  Securing a Warrant without Arguable Probable Cause

Second, Carter alleged that Gore violated his constitutional rights by securing an arrest warrant when "an objectively reasonable law enforcement officer in defendant[] Gore's [position] would have known that no arguable probable cause existed to arrest Plaintiff Carter for robbery or [as] a party to a crime." In *Malley v. Briggs*, the Supreme Court established that even if a magistrate approves an arrest warrant, the officer who applied for the warrant may be liable for violating the Constitution if the evidence presented to the magistrate was insufficient to establish probable cause. 475 U.S. at 345, 106 S. Ct. at 1098. Under this standard, however, the question is not whether probable cause actually existed; rather, the question is whether the officer had "arguable" probable cause. *Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990). Moreover, in order to

9

defeat an officer's qualified immunity defense, the plaintiff must show that "a reasonably well-trained officer . . . would have known that his affidavit failed to establish probable cause and that he should not have applied for a warrant." *Malley*, 475 U.S. at 345, 106 S. Ct. at 1098.

Specifically, this court has applied *Malley* to hold an officer liable where she secured an arrest warrant based on an affidavit that "articulate[d] neither the basis for her belief that [the suspect] violated the law nor any affirmative allegation that she had personal knowledge of the circumstances of [the] alleged crime." *Kelly*, 21 F.3d at 1555; *see also Garmon v. Lumpkin County*, 878 F.2d 1406, 1408–09 (11th Cir. 1989) (holding an officer liable where the affidavit states only that the suspect "did . . . commit the offense" because without "information providing the basis for the affiant's belief nor any affirmative allegation that the affiant had personal knowledge of the circumstances surrounding the alleged commission of the crime," the "conclusory assertion clearly is insufficient to establish probable cause" (citations omitted)).

*Malley* should not be read to subject officers to liability simply for leaving evidence out of an affidavit, however.  Instead, *Malley* sets a standard by which to judge the overall sufficiency of an officer's evidentiary basis for seeking an arrest warrant.  *Malley* explicitly states that the officer commits a violation only if her affidavit lacked probable cause *and* she "should not have *applied* for the warrant."

10

475 U.S. at 345, 106 S. Ct. at 1098 (emphasis added).  Inherent in this language is the proposition that qualified immunity is not lost when all the evidence available to the officer establishes at least arguable probable cause, even if this evidence is not listed in an affidavit.  *See Joyce*, 2007 WL 2781196, at \*6.

Carter's Amended Complaint alleges that a reasonable officer in Gore's position would have known that he lacked arguable probable cause.  This allegation, if plausible, states a constitutional violation that defeats Gore's qualified immunity.

### III.  The Sufficiency of Carter's Factual Allegations

We must now determine whether Carter's Amended Complaint contains "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (internal quotation marks omitted). Accordingly, the district court's dismissal of Carter's § 1983 claim against Officer Gore must be reversed if Carter's Amended Complaint contains sufficient facts to plausibly suggest (A) that Gore perjuriously secured a warrant for Carter's arrest, or (B) that Gore lacked arguable probable cause when he secured the warrant.

In his Amended Complaint, Carter asserts the following "factual enhancements" to bolster his legal allegations, *id.* at 678, 129 S. Ct. at 1949: he did not commit the crime alleged;[2] none of the surveillance photos Officer Gore was

---

[2] Carter does not clearly deny responsibility for the crime in his Amended Complaint.  He

11

shown depicted Carter; despite having credible eyewitness testimony from the Pawn Mart's clerk, Gore had no witness accounts to place Carter at the scene; Gore had no evidence that Carter had ever been to Rome, Georgia, let alone the Pawn Mart; Gore never found any information to connect Carter with the crime charged; and the state voluntarily decided not to prosecute Carter. He also quotes Gore's entire affidavit:

> "The Accused did commit the above offenses with the intent to appropriate merchandise to his own use without paying for the merchandise. He assisted a co-perpetrator by distracting store employees while the co-perpetrator took possession of a diamond ring valued at $9,000.00. Concealed the ring on his person and left the store without paying for the ring."

## A. Perjurious Statements in Support of a Warrant

For his § 1983 claim based on Gore's alleged violation of *Franks* to survive, Carter must allege facts to plausibly suggest that Gore "did not believe or appropriately accept as true" his ultimate assertion that Carter was guilty. This requires some evidence establishing Gore's subjective belief about the veracity of the assertions made in his affidavit. The only evidence in Carter's Amended Complaint relating to Gore's subjective belief is Gore's unequivocal assertion that Carter committed the crime. This is strong evidence that Gore subjectively

---

states only that the criminal charges against him were "falsely brought." In his Brief, however, Carter references his "contention that he did not commit the crime," and we will therefore assume his assertion that the charges are false was meant to be a denial of responsibility for the alleged crime.

12

believed Carter was guilty, and Carter has offered nothing to suggest that Gore was lying. Nor has Carter offered a possible motive for Gore to lie. These facts suggest that Gore genuinely, though perhaps erroneously, believed Carter was guilty. This plausibly suggests negligent disregard for the truth, but it does not suggest knowledge by Gore that his assertion was false as required to prove perjury and defeat qualified immunity.

The only hint that Gore perjured himself is Carter's conclusory allegation that Gore "fabricated evidence." Carter never specifies what evidence was presented to the magistrate that was supposedly fabricated, and based on Gore's affidavit, it appears that indeed *no evidence* was presented. Likewise, Carter's Amended Complaint does not mention a single item of evidence connecting him to the crime, fabricated or otherwise. Therefore, Carter's claim that Gore fabricated evidence is simply not plausible. To the extent that Carter's § 1983 claim against Gore is premised on a violation of *Franks*, his claim was properly dismissed.

## B.  Securing a Warrant without Arguable Probable Cause

Though Carter's allegations of perjury are not plausible, he has alleged facts sufficient to plausibly suggest that Gore secured an arrest warrant without arguable probable cause. Just as in *Kelly* and *Garmon*, Gore's affidavit contained only a conclusory assertion that the suspect committed a crime. By listing specific steps taken to commit the crime, the assertion in Gore's affidavit is longer and more

specific than was the assertion in *Garmon*, which simply stated that the suspect committed the alleged crime. But Gore's affidavit was legally deficient in precisely the same way: it provided no evidence to support Gore's assertions, nor did Gore allege personal knowledge about the crime. As in *Garmon*, a reasonable officer in Gore's position would have known that such a conclusory affidavit did not allege facts sufficient to establish arguable probable cause.

In support of his allegation that Gore lacked arguable probable cause, Carter claims that Gore had a number of reasons to believe that Carter did not commit the crime and no proof that he did. Without witnesses, photographic evidence, or any evidence placing Carter at the scene of the crime, what evidence did Gore have? According to Carter's Amended Complaint, the answer is nothing. That answer is confirmed by the state's eventual decision not to prosecute Carter and Gore's failure to find evidence against Carter even after his arrest. To be sure, there are many other inferences one could draw from the state's decision not to prosecute, but one particularly strong inference is that, as Carter suggests, there was no evidence against him in the first place.

Gore does nothing to suggest otherwise. Rather than point to the evidence which established arguable probable cause but which Gore left out of the affidavit for one reason or another, Appellee's Brief merely responds by stating:

> [Eyewitnesses and surveillance photographs] are not the only two
> possible categories of evidence that could provide probable cause—or

14

arguable probable case [sic] for qualified immunity purposes—in support of an arrest warrant.  For example, Randy Gore *could have* had fingerprint evidence, video surveillance, or other similar evidence linking Carter to the crime.

(Emphasis added.)  This is remarkably close to an admission that no such evidence in fact existed—only that it "could have."  In any event, it certainly does nothing to undermine Carter's contrary assertion.  These facts are sufficient to plausibly suggest that Gore's affidavit and the entirety of the facts known to him could not establish arguable probable cause.  Because Carter's Amended Complaint plausibly suggests that Gore secured an arrest warrant with virtually no evidence, qualified immunity does not bar further proceedings.

Though sparse, we find that these facts plausibly state a cause of action sufficient to survive a Rule 12(b)(6) motion solely as to Officer Gore in his individual capacity on the 42 U.S.C. § 1983 claim.  We therefore affirm in part, and vacate and remand in part, for further proceedings.

**AFFIRMED IN PART AND VACATED AND REMANDED IN PART.**

15