Lohn HARRIS, Plaintiff–Appellant,

v.

Leonard DEBELLIS, sued in his individual capacity, William D. Snyder, Defendants–Appellees,

Martin County Sheriffs Office, Defendant.

No. 15–14332

Non–Argument Calendar

United States Court of Appeals, Eleventh Circuit.

Date Filed: 08/10/2016

Faudlin Pierre, Law Office of Faudlin Pierre, Miami, FL, for Plaintiff–Appellant.

Christy M. Runkles, Purdy Jolly Giuffreda & Barranco, PA, Fort Lauderdale, FL, for Defendants–Appellees.

Before HULL, MARCUS and BLACK, Circuit Judges.

PER CURIAM:

Lohn Harris appeals the district court's order granting summary judgment in fa-

vor of defendants Leonard DeBellis and William Snyder on Harris's claims for unlawful seizure and malicious prosecution under 28 U.S.C. § 1983 and for false arrest and malicious prosecution under Florida state law. Harris contends the district court erred in holding that DeBellis[1] was entitled to qualified immunity as to the § 1983 claims and to sovereign immunity as to the Florida state law claims. According to Harris, DeBellis is not entitled to qualified immunity because DeBellis lacked arguable probable cause to believe Harris had committed a crime and because DeBellis completed a criminal complaint affidavit attesting to untruths that DeBellis either knew were untrue or would have known to be untrue had he not recklessly disregarded the truth. For the same reasons, Harris contends DeBellis acted with malicious purpose and is therefore not entitled to sovereign immunity under Section 768.28(9)(a), Florida Statutes. After review,[2] we affirm.

■ Both of Harris's claims under § 1983 require Harris to ultimately prove that DeBellis lacked probable cause to procure Harris's arrest. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1234–35 (11th Cir. 2004); *Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998). Because De-Bellis asserts qualified immunity, however, we may first consider whether DeBellis violated clearly established law. *See Ash-croft v. al–Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011). Under the clearly established law prong of qualified immunity analysis, DeBellis is entitled to summary judgment unless Harris can identify a genuine issue of fact regarding whether DeBellis had arguable proba-

ble cause to procure Harris's arrest. *See Carter v. Butts Cty., Ga.*, 821 F.3d 1310, 1319 (11th Cir. 2016); *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009). "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest." *Case*, 555 F.3d at 1327 (quotation marks omitted); *see also Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) ("Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." (quotation marks omitted)). Thus, "[t]he qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter*, 502 U.S. at 229, 112 S.Ct. at 537 (quotation marks omitted).

In Florida, a person commits a third-degree felony if he or she seeks controlled substances from a practitioner while withholding from the practitioner that he or she has received a controlled substance or a prescription for a controlled substance from a different practitioner within the preceding 30 days. *See* Fla. Stat. §§ 893.13(7)(a)(8), 893.13(7)(d). Thus, the elements of doctor-shopping in Florida are (1) receiving a controlled substance or prescription for a controlled substance from a practitioner; (2) then, within 30 days; (3) seeking controlled substances from a different practitioner; and (4) failing to inform the different practitioner about (1). Here, DeBellis collected evidence tending to establish each element of an offense for doctor shopping and therefore had at least arguable probable cause supporting his

─────

·1. Harris has elected to abandon his appeal as to Snyder.

2. We review *de novo* a district court's order granting summary judgment and draw all

reasonable inferences in the light most favorable to the non-moving party. *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011).

procurement of Harris's arrest in May 2013. *See Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S.Ct. 588, 593, 160 L.Ed.2d 537 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."); *Rankin*, 133 F.3d at 1435 ("Probable cause requires more than mere suspicion, but does not require convincing proof." (quotation marks omitted)).

The parties dispute how DeBellis identified Harris as a possible suspect, but it is undisputed that on December 11, 2012 DeBellis queried a Florida Department of Health database of controlled-substance prescriptions. The database indicated Harris filled 32 controlled-substance prescriptions between February 8 and November 26, 2012. Among the controlled-substance prescriptions, the database indicated that, within a seven-day period, Harris filled three prescriptions from two different prescribing doctors. DeBellis next procured the Park Pharmacy patient profile, which corroborated the database information regarding the latter two prescriptions (the first prescription was filled elsewhere). Because these sources together indicated that Harris sought and obtained controlled substances from two practitioners within a week, DeBellis had evidence tending to establish elements (1), (2), and (3) above. DeBellis also requested and obtained a prescription affidavit from Dr. Murphy, the doctor listed in the pharmacy profile as the prescribing doctor for the first and third prescriptions. Dr. Murphy stated that Harris had not informed him that Harris was already receiving narcotic medication and that Harris had signed a pain management agreement. Because Dr. Murphy's affidavit indicates Harris failed to notify Dr. Murphy that he was receiving controlled substances from a different practitioner, DeBellis had evidence tending to establish element (4) above.

Were there no further evidence, DeBellis would certainly have had actual probable cause to procure Harris's arrest. *See Rankin*, 133 F.3d at 1435. But DeBellis had also subpoenaed Harris's medical records from Dr. Talati (the doctor listed in the pharmacy profile as the prescribing doctor for the second prescription). Harris's medical records did not indicate that Harris had seen Dr. Talati during the seven-day period in question and did not indicate that Dr. Talati had prescribed controlled substances. While the records did not corroborate everything in the Park Pharmacy patient profile, they did not affirmatively contradict the profile. One could infer from the absence of references to controlled substances that the medical records were incomplete, that Harris forged a prescription, or that the Park Pharmacy patient profile was inaccurate. We do not know what DeBellis actually inferred from the medical records (he claims he thought they were incomplete), but we now know Park Pharmacy erred when entering records into its computer system, and all three of Harris's prescriptions for controlled substances were in fact prescribed by Dr. Murphy. Upon discovery of the error, the state attorney filed a *nolle prosequi* and Harris was freed after over four months in jail.

Despite the uncertainty Harris's medical records from Dr. Talati cast over what otherwise appeared to be clear evidence of each element of a doctor-shopping offense, reasonable officers could differ as to whether the records so undermined the other evidence as to defeat probable cause. *See Gerstein v. Pugh*, 420 U.S. 103, 121, 95 S.Ct. 854, 867, 43 L.Ed.2d 54 (1975) (The probable cause determination "does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands."); *Dahl v. Holley*, 312 F.3d 1228, 1234 (11th Cir.

2002) ("[A]rresting officers, in deciding whether probable cause exists, are not required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed."). Therefore, DeBellis had arguable probable cause to procure Harris's arrest. In finding arguable probable cause, we do not hold that DeBellis conducted a model investigation. With the benefit of hindsight, we see opportunities for DeBellis to check his assumptions and gather information that would have exonerated Harris of the doctor-shopping charges. But the qualified immunity standard "gives ample room for mistaken judgments," *Hunter*, 502 U.S. at 229, 112 S.Ct. at 537 (quotation marks omitted), and "arguable probable cause" does not mean "certainly guilty," *see Scarbrough v. Myles*, 245 F.3d 1299, 1302–03 (11th Cir. 2001) ("Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors.").

For many of the same reasons discussed above, we reject Harris's argument that DeBellis completed the criminal complaint affidavit with knowledge of or reckless indifference to its falsity. DeBellis may have been negligent in conflating the dates Harris filled his prescriptions with the dates Harris saw his practitioners and in failing to follow-up with Dr. Talati regarding the information that did not appear in Harris's medical records, but Harris fails to provide evidence sufficient to permit an inference that DeBellis either knew his representations were false or was recklessly indiffer-

ent to the falsity of his representations. *See United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980) ("[A] proven misstatement can vitiate an affidavit only if it is established that the misstatement was the product of deliberate falsehood or of reckless disregard for the truth. Allegations of negligence or innocent mistake are insufficient." (quotation marks and alteration omitted)).[3] Thus, the district court correctly granted summary judgment in favor of DeBellis on qualified immunity grounds.

 As to Harris's state law claims, we agree with the district court that sovereign immunity applies. Under Section 768.28(9)(a), an officer, employee, or agent of the state may not be held personally liable for conduct in the scope of his or her employment or function unless he or she "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). DeBellis was clearly operating within the scope of his employment. Therefore, for Harris's state law claims to proceed, Harris must provide evidence of bad faith, malicious purpose, or wanton and willful disregard. *See id.* DeBellis's failure to inquire further into the reason Harris's medical records from Dr. Talati did not match the Park Pharmacy patient profile does not suffice, and Harris provides no other evidence to support a finding of bad faith, malicious purpose, or wanton and willful disregard. *See Willingham v. City of Orlando*, 929 So.2d 43, 48 (Fla. 5th DCA 2006) (holding that "the benefit of [Section 768.28(9)(a) ] immunity is effectively lost if the person entitled to assert it is required to go to trial" and a court should therefore grant summary judgment if "no reasonable jury could have concluded" that the defen-

---

**3.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all deci-

sions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

dant acted with malice, in bad faith, or with wanton and willful disregard).

**AFFIRMED.**