**David MCKENZIE, Plaintiff,**

v.

**Curtis THOMPSON, Defendant.**

**1:15–CV–00050–ELR**

United States District Court,
N.D. Georgia, Atlanta Division.

Signed 02/22/2017

Ralph S. Goldberg, Goldberg & Cuvillier, P.C., Tucker, GA, for Plaintiff.

Terry Eugene Williams, Jason C. Waymire, Williams, Morris & Waymire, LLC, Buford, GA, for Defendant.

## ORDER

Eleanor L. Ross, United States District Judge

This matter comes before the Court on Defendant's Motion for Summary Judgment (Doc. No. 27.) For the reasons stated herein, the Court grants the motion.

### I. Background

Plaintiff David McKenzie brings this action against Defendant Curtis Thompson for violation of his constitutional rights.

The relevant facts of this case are largely undisputed. On April 7, 2013, a driver in a red car struck Mr. Johnny Coulston's Mercedes vehicle while it was parked at a commercial building complex. (Plaintiff's Response to Defendant's Statement of Undisputed Facts ("Pl's. Resp. to DSUF") ¶ 1, Doc. No. 43–1.) The driver of the red car fled, parked in a nearby business suite, and closed the garage door. (Id. ¶ 2.)[1] Mr. Coulston attempted to make contact with the driver by knocking on the door, but was unsuccessful. (Id. ¶ 3.)

Mr. Coulston then called the Rockdale County Sheriffs Office and Corporal Coggins and Deputy Douglas arrived at the scene. (Id. ¶¶ 4–5.) Mr. Coulston reported to these officers that a late model red Honda struck his vehicle and that the driver of the vehicle parked the car in a nearby garage and closed the door. (Deputy Douglas's Incident Report, Doc. No. 43–4, Ex. 3.) Deputy Douglas's report did not indicate if Mr. Coulston provided any details beyond the fact that it was an older model red Honda, such as the vehicle's body style or if it had any special features. (Id.) The officers attempted to contact the driver by knocking on the front and back doors of the suite, ringing the door bell,

---

1. Plaintiff only denies these allegations to the extent they suggest that he was the driver. Because the Court expresses no opinion as to whether Plaintiff was, in fact, the driver of the red car, the Court accepts these allegations as undisputed. Further, the evidence of the record supports Defendant's description of Mr. Coulston's recollection.

and having dispatch call the contact number on the door several times, all to no avail. (Coggins Dep. at 16, Doc. No. 41; Douglas Dep. at 6–7, Doc. No. 42.) Officer Douglas then prepared a hit and run accident report. (Pl's. Resp. to DSUF ¶ 12.)

At some point soon thereafter, Defendant Curtis Thompson, an investigator at the Rockdale County Sheriffs Office, was assigned to the case. (Id. ¶ 13.) Defendant, upon taking the case, spoke with Officer Coggins, who relayed to him that the car at issue was a small red passenger car, possibly a Honda. (Thompson Dep. at 14, Doc. No. 40.)[2] On May 14, 2013, Defendant contacted Mr. Coulston about the incident. According to Defendant's Supplemental Report, Mr. Coulston indicated to him that a "small red passenger car" struck his vehicle. (Doc. No. 43–4, Ex. 4.) Defendant also contacted the property manager, Mr. David Strickland, to determine who rented Suite D 2, the suite where the driver parked the red car. (Pl's. Resp. to DSUF ¶ 22.) Mr. Strickland indicated that it was leased to Mr. David McKenzie. (Id. ¶ 23.)

On May 15, 2013, Defendant visited Suite D 2 and attempted to make contact with Plaintiff. (Id. ¶ 26; Doc. No. 43–4, Ex. 4) Defendant was unsuccessful, and later called the number listed on the door of the suite from his personal cell phone. (Pl's. Resp. to DSUF ¶¶ 27–28) Defendant left a

voicemail message indicating that he was interested in purchasing a car. (Id. ¶ 29) Plaintiff called Defendant back, and the two discussed the purchase of a car or scooter and agreed to meet later that day. (Id. ¶ 31; Doc. No. 43–4, Ex. 4)

At approximately 2:30 PM that same day, Defendant went back to Suite D 2 and rang the bell. (Pl's. Resp. to DSUF ¶ 32.) Plaintiff came to the door, parted the blinds with his finger, and peeked out to see who was there. (Id. ¶ 33) And while Defendant contends that he knocked at the door, told Plaintiff to open it up, and identified himself and his reason for being there, Plaintiff suggests that Defendant pushed his way inside. (Id. ¶ 34.) Plaintiff does not dispute, however, that Defendant indicated that he was there to investigate a hit and run incident. (Id. ¶ 35.) Prior to this moment, Plaintiff and Defendant had never met or had any interaction with each other. (Id. ¶ 30.) Aside from Mr. Strickland, Plaintiff was the only person with access to his business suite. (Id. ¶ 56.)

In talking with Defendant, Plaintiff denied any knowledge of the accident.[3] (Id. ¶ 38.) Defendant asked if he could see Plaintiff's vehicle. (Id. ¶ 39.) Two vehicles were in the building, a small black car and a small red car. (Id. ¶ 40.) Defendant opined that the black vehicle had debris

---

**2.** Plaintiff vehemently disputes that there was ever any equivocation in terms of the type of car at issue. Rather, Plaintiff states that at all times Mr. Coulston and the officers on the scene were searching for a Honda. As Defendant explained, however, "[p]olice officers don't deal in absolutes when it comes to unknown things. . . . [W]hen I talked to Coggins about the vehicle, he told me it was a small red passenger car." (Thompson Dep. at 14.) Plaintiff has presented no evidence to dispute that this conversation occurred as detailed.

Although the Court ordinarily may not consider hearsay statements on a motion for summary judgment, the Court finds that Corporal Coggins's statements are capable of being re-

duced to admissible form. Jones v. UPS Ground Freight, 683 F.3d 1283, 1293–94 (11th Cir. 2012) ("[A] district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." (internal quotations omitted)).

**3.** Defendant maintains that, upon questioning, Plaintiff turned red. Plaintiff denies this characterization. Plaintiff additionally disputes whether Defendant provided details of the collision, such as the fact that Mr. Coulston's vehicle had approximately $1,000 in damage.

piled on and around it and appeared to have not been driven in a while. (Id. ¶ 42.)

Defendant informed Plaintiff that the vehicle in the accident was described as red.[4] (Id. ¶ 43.) The parties then walked over to the red vehicle. (DUSF ¶ 44; McKenzie Affidavit ¶ 24.) The vehicle was a red Geo Metro, which had red spray paint on the front bumper and hood area, the right rear quarter panel, and the left rear wheel well. (Pl.'s Resp. to DSUF ¶ 48.) The accident at issue left a red paint transfer on Mr. Coulston's gray Mercedes. (Id. ¶ 47.) Defendant characterizes the spray paint as looking fresh; Plaintiff states that the painting was done five years prior and that Defendant never asked when the car was painted. (DSUF ¶ 49; McKenzie Aff. ¶ 25.) Defendant also noticed a "fresh scrape" on the rear bumper, which Plaintiff contends was eight years old. (DSUF ¶ 50; McKenzie Aff. ¶ 13.) Again, Plaintiff states that Defendant never asked him when the scrape occurred. (McKenzie Aff. ¶ 13.) The red Geo Metro had a rack on it, which Plaintiff contends has been in place since 2008. (McKenzie Aff. ¶ 11.) Plaintiff also notes a number of other differences between a Honda and a Geo Metro which, Plaintiff suggests, had Defendant asked, he would have explained. (Id. ¶ 13.)

Defendant asked for Plaintiff's insurance information for the red vehicle, which Plaintiff provided. (Pl.'s Resp. to DSUF ¶¶ 51–52.) Defendant considered this to be odd, as one uninvolved with the accident would not have provided such information, but Plaintiff contends that he was cooperating because he feared being charged with obstruction. (DSUF ¶ 53; McKenzie Aff. ¶ 21.) Defendant took photographs of the red Geo Metro. (Pl.'s Resp. to DSUF ¶ 54.)

Thereafter, Defendant contacted Mr. Coulston and told him that the driver had been located, the driver provided his insurance information, and Defendant asked if Mr. Coulston would like to pursue charges. (Pl.'s Resp. to DSUF ¶¶ 59–60.) Mr. Coulston answered in the affirmative. (Id. ¶ 60.) Defendant then applied for an arrest warrant for Plaintiff, giving oral testimony and presenting a warrant application. (Id. ¶ 61.) In the warrant application, Defendant indicated that: "David McKenzie did strike a 1997 Silver Mercedes–Benz belonging to Johnny Coulston with a red Geo Metro. He then pulled his vehicle into a bay of his shop and refused to provide insurance information and refused to answer the door for Sheriffs deputies." (Doc. No. 43–4, Ex. 10.) A magistrate judge signed the arrest warrant. (Id.) The arrest warrant was then executed at Plaintiff's business, and Plaintiff was released on bond the next day. (Pl.'s Resp. to DSUF ¶¶ 63–64.)

Approximately one year later, the prosecutor moved the court to enter an Order of *Nolle Prosequi* for two reasons: (1) insufficient evidence to prove guilty beyond a reasonable doubt and (2) the victim no longer wished to assist the State in the prosecution. (Doc. No. 43–4, Ex. 9.)

## II. Legal Standard

 A party is entitled to summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this context, "materiality" is determined by the applicable substantive law; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202

---

4. Defendant states that Plaintiff again turned red in the face. Plaintiff denies this characterization.

(1986). Further, the Court must view the facts in the light most favorable to the party opposing the motion and must draw all reasonable inferences in that party's favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing U.S. v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

The party requesting summary judgment bears the initial burden of showing the Court, by reference to the record, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the non-movant has the burden of proof at trial, as is the case here, the movant can support its motion by either: 1) showing the nonmoving party has no evidence to support an essential element of its case; or 2) presenting "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." See Young v. City of Augusta, 59 F.3d 1160, 1170 (11th Cir. 1995) (citing Hammer v. Slater, 20 F.3d 1137, 1141 (11th Cir. 1994) (quoting U.S. v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991))). Notably, "it is never enough simply to state that the non-moving party cannot meet its burden at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). However, if the Court determines the movant has carried its initial burden, the non-movant must then "go beyond the pleadings" and demonstrate that there is indeed a genuine issue of material fact for trial. Celotex, 477 U.S. at 324, 106 S.Ct. 2548.

### III. Discussion

Defendant argues that he is entitled to summary judgment on all of Plaintiff's claims.

### A. Nature of Plaintiff's Claims

Before addressing Defendant's pending motion, the Court finds it helpful to first consider exactly the claims the Amended Complaint purports to set forth. There is some confusion between the parties on this issue, in large part, because Plaintiff does not identify his causes of action by name.[5] For example, "Count One" contains a string of factual and jurisdictional allegations, as well as Plaintiff's assertion that he was arrested without arguable probable cause. "Count Two" alleges that Defendant materially misled the magistrate judge by omitting material facts from the warrant application. "Count Three" alleges that Defendant failed to conduct an adequate investigation. "Count Four" alleges that Defendant instituted and carried on the prosecution maliciously.

In his response brief, Plaintiff indicates that, despite the structure of his Amended Complaint, there are just two claims in this case: (1) a Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) claim based on Defendant's omission of material information from the warrant application and (2) a malicious prosecution claim for failure to do an adequate investigation. And while Plaintiff suggests that the false warrant application claim is somehow different from a claim for malicious prosecution, the Eleventh Circuit holds that "[a] police officer who applies for an arrest warrant can be liable for malicious prosecution if he should have known that his application failed to establish probable cause or if he made statements or omissions in his application that were material and perjurious or recklessly false." Black v. Wigington, 811 F.3d 1259, 1267 (11th Cir. 2016) (internal quotations

---

5. The Court notes that this is not the first time it has addressed this pleading issue with Plaintiff's counsel. Kinzy v. Cannon, et al., 1:12–cv–03941–ELR, 2015 WL 12864237, Doc. No. 75 (May 12, 2015). The Court would encourage counsel to address this deficiency in future cases to avoid the same confusion.

and citation omitted) (addressing a <u>Franks</u> violation within a malicious prosecution claim); <u>see also</u> <u>Carter v. Gore</u>, 557 Fed. Appx. 904, 906 (11th Cir. 2014); <u>Kelly v. Curtis</u>, 21 F.3d 1544, 1554 (11th Cir. 1994); <u>Williams v. Ingram</u>, No. 1:12-CV-263-WKW, 2014 WL 1765615, at *6 (M.D. Ala. May 2, 2014) ("The Eleventh Circuit has applied <u>Franks</u> in § 1983 Fourth Amendment malicious prosecution claims."). Accordingly, the Court interprets Plaintiff's Amended Complaint as presenting a single claim for malicious prosecution based on two alleged constitutional violations, one based on omitting material facts in the warrant application and one based on an inadequate investigation.

### B. Malicious Prosecution and Qualified Immunity

■ A claim for malicious prosecution arises under the Fourth Amendment, and has following elements:

> To establish a § 1983 malicious prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures. As to the first prong, the constituent elements of the common law tort of malicious prosecution are: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused. . . .
>
> As to the second prong, it is well established that an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment. Consequently, the existence of probable cause defeats a § 1983 malicious prosecution claim.

<u>Grider v. City of Auburn, Ala.</u>, 618 F.3d 1240, 1256 (11th Cir. 2010) (internal quotations and citations omitted).

> For probable cause to exist, an arrest must be objectively reasonable based on the totality of the circumstances. This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. Although probable cause requires more than suspicion, it does not require convincing proof, and need not reach the same standard of conclusiveness and probability as the facts necessary to support a conviction.

<u>Wood v. Kesler</u>, 323 F.3d 872, 878 (11th Cir. 2003) (internal quotations, citations, and alterations omitted).

■ In this case, Defendant asserts that he is entitled to qualified immunity. Generally, government officials have qualified immunity "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Maughon v. Bibb County</u>, 160 F.3d 658, 660 (11th Cir. 1998) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

> When asserting the affirmative defense of qualified immunity, an officer must first establish that he was engaged in a discretionary function when he performed the acts at issue in the plaintiff's complaint. If the officer satisfies his burden of proof to show that he was engaged in a discretionary function, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. To do so, the plaintiff must prove that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the

time of the alleged violation. If the plaintiff succeeds, the defendant may not obtain summary judgment on qualified-immunity grounds.

Kinzy v. Warren, 633 Fed.Appx. 705, 706 (11th Cir. 2016) (internal citations omitted). It is undisputed that Defendant was engaged in a discretionary function when he conducted his investigation and obtained the arrest warrant. Accordingly, the burden shifts to Plaintiff to show that Defendant violated a clearly established constitutional right. Importantly, qualified immunity provides "protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Liberally construed, Plaintiff references two constitutional violations: (1) Defendant omitted material information in the warrant application and (2) Defendant failed to conduct an adequate investigation.

### i. Omissions from Warrant Application

Plaintiff contends Defendant violated his constitutional rights by omitting material information from the warrant application. See Franks, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667; Kelly v. Curtis, 21 F.3d 1544, 1554 (11th Cir. 1994). In Franks, the Supreme Court "held that the Fourth Amendment is violated where an officer, knowingly and intentionally or with reckless disregard for the truth, submits a false sworn statement to secure a warrant and the statement is necessary to the finding of probable cause." Williams, 2014 WL 1765615, at *5; see also Bracey v. Jolley, No. 1:10-cv-4064-TCB, 2013 WL 12097643, at *4 (N.D. Ga. Mar. 27, 2013) (holding that omissions contained within a warrant application "violate the Fourth Amendment if (1) they are the product of deliberate falsity or reckless disregard for the truth, and (2) they were necessary to the finding of probable cause. But again, the

existence of probable cause must be assessed in the light of the objective legal reasonableness of the officer.").

To receive qualified immunity on Plaintiff's claim, "the officer need only show that, after correcting for any misstatements or material omissions, the warrant affidavit would have established arguable probable cause." Bracey, 2013 WL 12097643, at *4. Stated differently, to overcome summary judgment based on qualified immunity, Plaintiff "must raise a genuine dispute of fact as to whether (1) the warrant affidavit failed to establish arguable probable cause on its face, or (2) the warrant affidavit included false statements or omissions that were intentional or reckless and were necessary to establish arguable probable cause." Id.

Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[ ] could have believed that probable cause existed to arrest Plaintiff." Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004). "If reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity." Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003).

Plaintiff represents in his response brief that he only brings a claim for a Franks violation and a claim for inadequate investigation. Thus, it appears that he does not challenge the sufficiency of the warrant application on its face. Even so, and because Plaintiff's Amended Complaint does challenge whether arguable probable cause existed, the Court addresses this issue first.

Plaintiff's arrest was based on O.C.G.A. § 40–6–271, which provides:

(a) The driver of any vehicle which collides with any vehicle which is unattend-

ed shall immediately stop and shall then and there either locate and notify the operator or owner of such vehicle of the name and address of the driver and owner of the vehicle striking the unattended vehicle or shall leave in a conspicuous place on the vehicle struck a written notice giving the name and address of the driver and the owner of the vehicle doing the striking.

(b) Any person who fails to comply with the requirements of subsection (a) of this Code section shall be guilty of a misdemeanor.

The warrant application indicated that Plaintiff, while driving a red Geo Metro, struck Mr. Coulston's vehicle, pulled into a bay of his shop, and refused to provide insurance or other identifying information. Based on these facts, a reasonable officer in that situation could certainly believe that probable cause existed to arrest Plaintiff for violation of O.C.G.A. § 40–6–271.

▉ Plaintiff argues that Defendant withheld "clearly critical evidence" from the magistrate judge. (Doc. No. 43 at 8.) As detailed above, "when an affiant omits material facts from an arrest warrant without an intent to deceive, reviewing courts simply add the omitted facts to those originally included and retest the sufficiency of the showing of probable cause." Joseph v. Kimple, 343 F.Supp.2d 1196, 1203 (S.D. Ga. 2004) (internal quotations omitted); see also Bracey, 2013 WL 12097643, at *4 ("Thus, to receive immunity, the officer need only show that, after correcting for any misstatements or material omissions, the warrant affidavit would have established arguable probable cause."); Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) ("Under [the corrected affidavit] doctrine, we look to the hypothetical contents of a 'corrected' application to determine whether a proper warrant application, based on existing facts known to the applicant, would still have

been sufficient to support arguable probable cause to make the arrest as a matter of law.").

Plaintiff suggests a "proper statement" would have been that (1) the witness identified a red Honda; (2) Defendant was unaware if Plaintiff owned a red Honda because he failed to ask him; (3) Plaintiff's red vehicle had a rack and Defendant never asked the victim if the red vehicle had a rack; and (4) Defendant did not know what type of Honda the victim identified. (Doc. No. 423 at 8–9.) The Court finds that adding the aforementioned facts into Defendant's statement does not alter the conclusion that arguable probable cause existed.

▉ Even taking into account that Mr. Coulston did not provide precise, photographic details, such as whether the car had a rack on the top or its correct year, make, and model, the Court concludes that reasonable officers still could have believed that probable cause existed to support an arrest warrant. "[A]n officer is entitled to rely on a victim's criminal complaint as support for probable cause." Rankin v. Evans, 133 F.3d 1425, 1441 (11th Cir. 1998). In such circumstances, the officer is to look at "the fundamental information provided" by the statements and determine if the statements were "sufficiently reliable and trustworthy." Id. Here, the fundamental information provided by Mr. Coulston was that a small, older model red vehicle struck his car and fled to a nearby suite. Mr. Strickland, the property manager, identified that suite as rented and occupied by Plaintiff. Upon further investigation, Defendant found a small, older model red vehicle, with damage, in Plaintiff's control inside the same suite where the driver fled.

Plaintiff urges the Court to require a level of certainty that is simply not required for probable cause or qualified im-

munity. Harris v. Debellis, 658 Fed.Appx. 940, 943 (11th Cir. 2016) ("[A]rguable probable cause does not mean certainly guilty." (internal quotations omitted)); Dahl v. Holley, 312 F.3d 1228, 1234 (11th Cir. 2002) (An officer need not "sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed. Nor does probable cause require certainty on the part of the police."); Kelly v. Serna, 87 F.3d 1235, 1241 (11th Cir. 1996) ("There is a substantial difference between the quantum of proof necessary to constitute sufficient evidence to support a conviction and that necessary to establish probable cause.").

The record reveals no genuine issue of material fact regarding whether Defendant had arguable probable cause because any omissions from the warrant application were inconsequential. Having found that Defendant had arguable probable cause, if not actual probable cause, there can be no constitutional violation, and therefore, Defendant is entitled to summary judgment on Plaintiff's Franks claim. See Bracey, 2013 WL 12097643, at *6 (finding that the defendants were entitled to qualified immunity on the plaintiff's malicious prosecution and false arrest claims because the warrant affidavit was supported by arguable probable cause and the plaintiff failed to raise a genuine dispute as to whether the defendants intentionally or recklessly omitted known facts that would have defeated arguable probable cause).

### ii. Inadequate Investigation

 Plaintiff additionally asserts that had Defendant conducted an adequate investigation he would have determined that probable cause did not exist. As it pertains to Defendant's investigation, Plaintiff argues that Defendant never followed up with Mr. Coulston regarding the vehicle make, model, or other identifying details;

Defendant did not speak with Officer Douglas regarding his report or initial investigation; Defendant did not tell Plaintiff that the vehicle identified by Mr. Coulston was a Honda; Defendant did not ask Plaintiff where he was on the day in question; and Defendant never took measurements of Plaintiff's Geo Metro, which would have revealed it was several inches lower than a Honda.

 "An officer must conduct a constitutionally sufficient investigation before making an arrest. While officers may not ignore known exculpatory information in deciding whether to arrest, they need not explore every proffered claim of innocence or take every conceivable step to eliminate the possibility of convicting an innocent person. An officer may normally rely on a victim's criminal complaint to support probable cause." Weinerth v. Ayers, No. 2:10–cv–170–FtM–29SPC, 2012 WL 390512, at *2 (M.D. Fla. Feb. 7, 2012) (citing Kingsland, 382 F.3d at 1229, and Rankin, 133 F.3d at 1441).

Plaintiff suggests that the Eleventh Circuit's decision in Kingsland is "exactly on point for this case." (Doc. No. 43 at 17.) Kingsland, however, "cautions that an officer investigating the existence of probable cause 'should not be permitted to turn a blind eye to exculpatory information that is available to them, and instead support their actions on selected facts they ch[o]ose to focus upon.'" Buckner v. Williamson, No. 3:06-CV-79 (CDL), 2008 WL 2415265, at *13 (M.D. Ga. June 12, 2008) (quoting Kingsland, 382 F.3d at 1228). Furthermore, "the Eleventh Circuit was careful to note that Kingsland was 'a unique and exceptional case wherein the investigating officers were responding to a call made by a fellow officer ... to an accident involving that very officer' and the plaintiff 'complain[ed] of a conflict of interest and suggest[ed] a possible motive

for allegedly covering up a fellow officer's wrongdoing.' " Id. (quoting Kingsland, 382 F.3d at 1228 n.9). Critically, no such allegations exist in this case, and therefore, the Court finds the facts of Kingsland inapposite.

Rather, the record evidence reveals that Corporal Coggins and Deputy Douglas of the Rockdale County Sheriffs Office responded to the scene of the accident and took Mr. Coulston's statement; Deputy Douglas prepared a hit and run accident report; Defendant reviewed the report and spoke to Corporal Coggins; Defendant contacted the landlord of the building to determine who leased Suite D 2; Defendant contacted Plaintiff directly and explained that he was investigating a hit and run involving a small red car; and Defendant inspected Plaintiff's red vehicle and took photos of damage, including what he believed to be fresh spray paint. Defendant also determined that Plaintiff was the sole occupant of Suite D 2. While it is certainly possible that Defendant could have conducted a more thorough investigation, by questioning Plaintiff about his whereabouts or taking measurements of the vehicle, qualified immunity does not require the officer to leave no stone unturned. See also Fronczak v. Pinellas Cty., Fla., 270 Fed.Appx. 855, 858 (11th Cir. 2008) (holding that for the purpose of probable cause and qualified immunity, the officer need not "ignore the probable cause standard to amass convincing proof of guilt." (quoting Rankin, 133 F.3d at 1435–36)).

Even construing the record in the light most favorable to Plaintiff, the Court finds no dispute of material fact suggesting that Defendant's investigation was constitutionally deficient. Accordingly, Defendant is entitled to qualified immunity on Plaintiff's inadequate investigation claim.

## IV. Conclusion

For the reasons stated herein, the Court **GRANTS** Defendant's Motion for Summary Judgment. (Doc. No. 37.) The Court **DIRECTS** the Clerk to enter judgment in favor of Defendant and **CLOSE** this case.

**SO ORDERED**, this 22nd day of February, 2017.